**Joan BLANK et al., Plaintiffs,**

v.

**TALLEY INDUSTRIES, INC., et al.,
Defendants.**

**No. 70 Civ. 4144.**

United States District Court,
S. D. New York.

Jan. 14, 1975.

Austrian, Lance & Stewart, P. C., New York City, William Klein, II, New York City, of counsel, Cowan, Liebowitz & Latman, P. C., New York City, Alan Latman, New York City, of counsel, for plaintiffs.

Donovan, Leisure, Newton & Irvine, New York City, for defendant Talley Industries, Inc.; Walter L. Stratton, Brent L. Brandenburg, New York City, of counsel.

Cahill, Gordon & Reindel, New York City, for defendants Bramen B. Adams, II, Donald D. Harrington, John D. MacNaughton, Jr., Peat, Marwick, Mitchell & Co., John C. Robinson, William C. Speed, Wesley A. Stanger, Jr., and John W. Stodder; William E. Hegarty, John de Boisblanc, New York City, of counsel.

Davis, Polk & Wardwell, New York City, for defendants Julius Green, Executor of the Last Will and Testament of Charles W. Kennard, Thomas J. Murtagh and Smith, Barney & Co.; Stephen D. Hoffman, New York City, of counsel.

Simpson, Thatcher & Bartlett, New York City, for defendants Lehman Brothers and William Osborn; Edward Mendryzcki, New York City, of counsel.

Rogers, Hoge & Hills, New York City, for defendants American Investors Fund, Inc. and George A. Chestnutt, Jr.; Clendon H. Lee, New York City, of counsel.

Kissam & Halpin, New York City, for defendant Joseph D. DiSesa; James G. Simms, New York City, of counsel.

Mudge, Rose, Guthrie & Alexander, New York City, for defendants Arthur E. Ehlenberger, Gerald E. Hirt and Franz G. Talley; Richard Marrin, New York City, of counsel.

Patterson, Belknap & Webb, New York City, for defendant M. Kimelman & Co.

Sidney P. Howell, New York City, for defendants Oscar Kimelman and Thomas F. Reddy, Jr.

Rogers & Wells, New York City, for defendant M. Stuart Roesler; Frederick Lorenzen, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This class action was settled pursuant to the terms of an agreement, notice of which was given to all interested shareholders, and which was approved by this court after a hearing. Familiarity is assumed with the court's opinion approving the proposed settlement.[1] Under its terms, in the event 100% of the shareholders entitled to participate therein filed claims, the maximum sum the contributing defendants[2] would be required to pay would be $14,088,062, consisting of cash, notes and warrants. However, upon the expiration of the deadline for filing of proofs of claim by shareholders, claims representing 1,637,866 shares out of an eligible 2,194,968—74.6% of the eligible shares—had been filed. Thus, if all filed claims are allowed, participating shareholders will receive $10,509,694 in cash,

---

1. Blank v. Talley Indus., Inc., 64 F.R.D. 125 (S.D.N.Y.1974).

2. The payments are to be made by Talley Industries, Inc. and two other defendants.

notes and warrants. The agreement provides that fees, disbursements and expenses shall be deducted "off the top," i. e., pro rata from each shareholder's distributive share, but if less than all participate, then the defendants are required to pay the portion of fees and disbursements allocable to such nonparticipating shares.

The matter now before the court is the joint application by two law firms, Austrian, Lance and Stewart (P. C.) (hereafter "Austrian firm") and Cowan, Liebowtiz and Latman (P. C.) (hereafter "Cowan firm"), who represented the class action plaintiffs, for allowance of fees in the sum of $3,055,000 and reimbursement of expenses of $76,558.56. Seven shareholders, owning 2,200 shares, filed written objections on the ground that the requested fee was excessive; opposition was also expressed by the principal defendant, Talley Industries (hereafter "Industries"). Thereafter the court conducted a two-day evidentiary hearing[3] at which the lead attorneys of each law firm seeking fees testified and were cross-examined principally by the attorney representing Industries.

In the consideration of this application we are of course guided by the ruling of our Court of Appeals in City of Detroit v. Grinnell Corp.[4] Under its doctrine, in evaluating the services performed by attorneys whose activities have conferred a benefit upon a class or group, the starting point is an evaluation of the attorneys' services in terms of time expended on the matter—an item deemed capable of objective determination based upon contemporaneous time records maintained by the attorneys. The time factor encompasses two important elements: (1) who performed the services, whether senior partner, junior partner or associate; and (2) the nature of the services, whether rendered in pretrial discovery, drafting of pleadings, motions and briefs, or settlement negotiations. After the time evaluation is made, then qualitative factors may be considered in deciding whether the compensation to be awarded should be increased or decreased. These factors include the risk of litigation and of non-reimbursement of expenses in the event of non-recovery; the probability of success; the magnitude and complexity of the litigation; the responsibility undertaken; the expertise and standing of the attorneys who brought about the result; the strength of the opposition; the amount recovered; other results achieved and other factors.[5]

The total time spent by both firms of plaintiffs' attorneys, according to a schedule filed in support of their application, was 12,127.15 hours, of which 8,548.7 hours reflected partners' services and 3,578.45 associates' services. Of this total, the Austrian partners spent 7,001 hours on matters and their associates 1,061.75; the Cowan firm partners spent 1,547.7 hours and their associates 2,516.7. The application is accompanied by detailed information as to the nature of the services and by whom they were performed.[6] The two law firms are of moderate size. Accordingly their functional structure encompassed principally the activities of partners and associates, some of whom performed services similar in nature to those performed by partners.

Despite the repeated and unmistakable admonitions by our Court of Appeals on the importance of keeping accurate and

---

3. The need for such a hearing in a case like this was expressed in City of Detroit v. Grinnell Corp., 495 F.2d 448, 468 (2d Cir. 1974) ; Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 169–170 (3d Cir. 1973). *See also* White v. Auerbach, 500 F.2d 822 (2d Cir., 1974).

4. 495 F.2d 448 (2d Cir. 1974). *See also* Lindy Bros. Bldrs., Inc. v. American Radiator &

Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973).

5. City of Detroit v. Grinnell Corp., 495 F.2d at 470; Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp., 487 F. 2d at 168.

6. Application for Fee Award at 40, Exhibit D.

**4**

current records of time spent on matters, the nature of services and by whom performed where attorneys seek allowances from courts,[7] two of the partners in the Austrian firm failed to keep such records.[8] Lawyers in the Cowan firm kept daily time records but failed at times to delineate the nature of services performed.

■ The Austrian applicants presented a reconstructed estimate of time, by whom spent and the nature of the services rendered, abstracted from contemporaneous diary entries made by one partner and a combing of the voluminous files accumulated as the litigation progressed. The accuracy of this reconstructed record was challenged upon the hearing. In any event, the failure to keep proper records is a factor to be considered in accepting the reliability of estimates made long after the rendition of services to support a fee application.[9]

Apart from this shortcoming, this court is satisfied, and so expressed itself during the evidentiary hearing, that an excess of time was spent and excess personnel engaged on various matters of a routine or ministerial nature which required no special skill. A court is presumed to be knowledgeable as to fees generally charged by attorneys and the quality of services rendered in the matter;[10] equally it may be presumed to be knowledgeable as to the reasonable time and the number of attorneys required to perform services competently and effectively in furthering the success of a litigation. Some of the estimates appear to exceed the time reasonably required to perform the particular services described. In a number of instances, several lawyers were assigned to tasks

or to back stop another in matters of simple procedure, which presented no unusual problems. In other instances, as the record glaringly reveals,[11] partners rendered services for which compensation is sought at partners' time rates, when such services readily could have been performed by junior associates. As this court stated in a somewhat related context involving fees and costs in a litigation: "[u]ndoubtedly, parties to a litigation may fashion it according to their purse and indulge themselves and their attorneys, but they may not foist their extravagances upon their unsuccessful adversaries."[12]

Turning again to the time allegedly spent by the applicants, Industries, the principal defendant, contends that 3,116 hours of the 8,063 hours claimed by the Austrian firm were arrived at by recent estimates, and challenges the reliability of the reconstructed record. The applicants respond that the estimates are conservative and do not include approximately 2,000 hours spent by two Austrian partners who failed to record their activities. Upon this record there is no method for precise and definitive determination of the time actually spent by the applicants or the alleged overrun of time; it is difficult to determine these matters with exactitude. Applying an empirical judgment based upon knowledge of various aspects of this litigation, the court is of the view that scaling down the claimed hours of both partners and associates by ten (10) percent represents a realisitic view of the time ordinarily and reasonably required by competent attorneys to prosecute plaintiffs' claim and achieve the settlement. Thus, the court finds that partners' time

7. In re Hudson & Manh. R.R., 339 F.2d 114, 115 (2d Cir. 1964); In re Nazareth Fair Grounds & Farmers' Mkt., Inc., 374 F.2d 595, 597–598 (2d Cir. 1967); In re Borgenicht, 470 F.2d 283 (2d Cir. 1972).

8. Petitioners allege that as a result the application does not include a substantial amount of the time of these partners.

9. In re Nazareth Fair Grounds & Farmers' Mkt., Inc., 374 F.2d at 598.

10. Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d at 169.

11. Record at 103, 126, *passim*.

12. Farmer v. Arabian American Oil Co., 31 F.R.D. 191, 193 (S.D.N.Y.1962), rev'd, 324 F.2d 359 (2d Cir. 1963), rev'd, 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964).

to be compensated totals 7,694 hours (8,549 hours less 10%) and associates' time, 3,220 hours (3,578 hours less 10%).

The next element to be considered is the valuation of this time. Needless to say there is a difference of opinion between the applicants and the objectors. Indeed, the two petitioning partners have different rates for the services of partners and associates in non-contingent matters; they also differ as to the basis upon which the request for an allowance of $3,055,000 was predicated.

The Cowan partner, in testimony that was somewhat confusing, testified that he arrived at the figure of $3,055,000 by analogizing the instant situation to that of a private client, taking into account the contingent nature of the action, the results achieved and other factors. On this basis he acknowledged that the time charges for the approximately 12,000 hours claimed by the applicants averaged $250 per hour for both partners and associates. He testified that for non-contingent services his firm would charge a client $85 to $100 per hour for partners' time, $65 per hour for senior associates' and $45 per hour for junior associates'.

The Austrian partner testified that his firm generally bills clients in non-contingent matters at $100 for partners' time, but that for specialty work, such as this type of action, it frequently charges $125 per hour or more for partners' time. Associates' time in the Austrian firm is billed at $60 per hour. The Austrian partner calculated the requested fee by several methods, including a percentage basis. He evaluated the total settlement at approximately $15,000,000 and was of the view that 20%, or approximately $3,000,000, was fair and reasonable.

Industries counsel, who as opposing counsel was familiar with the nature and extent of the petitioners' services, was of the view that, based on all factors, including time, contingency and results achieved, a fair and reasonable fee would be $1,000,000. This estimate was based on across the board compensation for partners and associates at $100 per hour for 10,000 hours of services.

In the circumstances of this case, it is feasible to evaluate the time spent by partners and associates by applying average rates to all types of services.[13] The court is of the view that a fair and reasonable fee for the time factor, without consideration of other elements, is $100 per hour for partners' time (7,694 hours), $769,400, and $50 per hour for associates' time (3,220 hours), $161,000, or a total of $930,400.

While time is a factor, it should be stressed that it is only of relative importance.[14] To give it prime importance may at times result in rewarding inefficiency or the luxurious practice of law and penalizing those who are efficient and expeditious in performing their legal tasks.

We next consider whether other factors warrant an increase or decrease of the sum allowed on the time basis. Petitioners properly stress that the services rendered over a four-year period were on a contingent basis—if they failed in their efforts they would receive no compensation and be out of pocket a substantial sum expended for disbursements. The risk of litigation factor was great; there was no assurance of success. The defense vigorously denied plaintiffs' charges of misconduct. The opposition was strong; it stubbornly resisted every substantial move by plaintiffs' attorneys aimed at dredging up the basic information that was essential

13. Cf. Trans World Airlines, Inc. v. Hughes, 312 F.Supp. 478, 484 (1970), modified on other grounds, 449 F.2d 51 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973).

14. *See* Levin v. Mississippi River Corp., 377 F.Supp. 926, 931 (S.D.N.Y.), aff'd on opinion below, 508 F.2d 836 (1974).

to establish their charges.[15] The plaintiffs' attack centered about the proxy statement which led to the merger of General Time into Industries, and the $19,000,000 write-off of excess inventory costs soon after the merger, discussed in detail in the court's opinion approving the settlement. While this court has found[16] that had the case gone to trial there was substantial probability of success, this was due in large measure to the extensive and sustained pretrial discovery activities of the petitioners. It was the ability and tenacity of the attorneys in ferreting out facts that eventually gave indication of probability of success in the event of a trial and brought about the settlement.

The attorneys in this case did not have the benefit of a prior action or investigation by the Securities and Exchange Commission with respect to the claims here asserted against the defendants. To the contrary, in this instance the reverse is true. Almost three years after the petitioners filed suit on behalf of the plaintiffs, and after they had conducted pretrial discovery, the SEC commenced its own action based upon substantially the same claims alleged in this action. The high quality of petitioner's services may be gleaned inferentially from the circumstance that the settlement agreement of the SEC action, applicable to all defendants except one, included a stipulation that if this suit were not settled substantially as proposed, the final judgment in the SEC action was to be vacated nunc pro tunc. In sum, there can be no doubt that these attorneys rendered skillful and effective services of a high order which brought about the settlement, and that they are entitled to compensation in addition to that computed above on a time basis.

What is fair and reasonable compensation cannot be determined with mathematical certainty. Our Court of Appeals has admonished courts passing upon fee applications to scrutinize them with an "eye to moderation."[17] "For the sake of their own integrity, the integrity of the legal profession, and the integrity of Rule 23," the court said, "it is important that the courts should avoid awarding 'windfall fees' and that they should likewise avoid every appearance of having done so."[18]

Petitioners here contend that their requested allowance of over $3,000,000 is moderate based principally upon the results achieved for the class they represented. They argue that the benefit to the shareholders based upon the combination of cash, notes and warrants taken at face value is $14,088,062, or $6.42 per share. That would be true if all shareholders availed themselves of the settlement; but the fact is that shareholders owning only 74.6% of the shares have filed claims. Petitioners, however, press that the benefits of the settlement were available to all shareholders and that they should be compensated on the basis of the maximum settlement figure. The court does not agree. Whatever the reason, whether dissatisfaction with or indifference to the settlement, the fact is that the shareholders holding over 25% of the shares will not participate in the proceeds of the settlement and will derive no benefit therefrom. Thus the benefits actually conferred will be not $14,088,062, but approximately $10,500,-000. There is no reason why the attorneys should be compensated for potential benefits not accepted by members of the class.

Accordingly, taking into account the total results achieved, the complexity of the problem presented by the litigation, the skill and experience of the attorneys, the risk of no compensation or recovery of expenses in the event of non-recovery, and other pertinent factors, the court finds an additional fee warranted. Petitioners are allowed 50% additional to the $930,400, allowed as in-

---

15. *See* Blank v. Talley Indus., Inc., 64 F.R.D. at 132.

16. *Id.* at 129–130.

17. City of Detroit v. Grinnell Corp., 495 F.2d at 470.

18. *Id.* at 469.

dicated above, or $485,250, making a total fee allowance to the attorneys of $1,395,600; they are also allowed their requested expenses of $76,558.56, as to which no objection has been made.

As previously noted, the agreement provides that as to non-participating shares, their aliquot share of the fee awarded shall be paid by defendants. The fees chargeable to assenting shareholders are payable in kind, that is, by cash, notes and warrants; however, as to the non-participating shareholders, the fees to be paid by defendant shall be paid in cash.

The order to be entered shall also provide for payment to Industries of $180,071 for expenses incurred in performing its administrative and clerical functions under the stipulation of settlement, in acting as disbursing agent of the settlement funds, and in compensating the Chemical Bank for its services as escrow agent under the stipulation.

■ American Investors Fund, Inc. (hereafter "AIF"), an affiliate of both Industries and General Time, and three other shareholders of General Time who are outside directors, were named as defendants in this action, but under an order entered by Judge Gurfein they were excluded from the class with a provision that in the event of dismissal of the action against them they could seek reentry to the class. The stipulation of settlement provided for dismissal of the action against them, and this court, in the order approving the settlement (with one shareholder objecting), restored them to the class.[19] They are beneficiaries of the payments to be made to the shareholders and have filed claims totalling 353,396 shares, representing slightly over 16% of the total shares of General Time stock entitled to participate in the settlement. They seek, however, to be relieved of payment of their pro rata share of fees allowed. AIF requests that plaintiffs' attorneys be required to pay over 10% of their award based upon its 10% ownership of its shares in the claimant class. Essentially this group contends there was no basis for any claim against them and that they were unnecessarily put to substantial expense in defending themselves against the claims asserted by plaintiffs. While it is true that intensive discovery did not disclose substantial evidence to support plaintiffs' charges that these defendants knew of or in fact anticipated the nineteen million dollar write-off, it also appeared that with respect thereto they relied upon assurances, orally or in writing, made by Franz G. Talley, chief executive officer of Industries. The evidence may not have been sufficient to predicate personal liability against them in the event the action had proceeded to trial; however, reliance upon Talley's representation did not necessarily relieve the directors of their fiduciary duties or the affiliate of its legal obligations. Thus, while ultimate results could not have been forecast upon the commencement of litigation, plaintiffs' attorneys were justified in naming them as defendants. I find no basis for relieving them of the payment of their shares of the fees allowed.

■ A final word. Upon the hearing of the fee application and in Industries' brief, it was urged that a substantial reduction should be made in the allowance of fees because the petitioning attorneys allegedly engaged in champerty and maintenance in soliciting one of the class action plaintiffs. If in fact this charge were true, there should be no allowance. I find, however, that the charge is without substance—indeed, it is even surprising that it was advanced.

19. *See* Blank v. Talley Indus., Inc., 64 F.R.D. at 134.