**FARMINGTON DOWEL PRODUCTS CO., Plaintiff,**

v.

**FORSTER MFG. CO., Inc. and Theodore R. Hodgkins, Defendants.**

Civ. No. 7–73.

United States District Court
D. Maine, S. D.

March 11, 1969.

C. Keefe Hurley, Earle C. Cooley, Hale & Dorr, Boston, Mass., John A. Mitchell, John W. Philbrick, Portland, Me., for plaintiff.

Robert W. Meserve, John R. Hally, Nutter, McClennen & Fish, Boston, Mass., Joseph B. Campbell, Augusta, Me., Richard A. Tilden, New York City, for defendants.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This is a private action brought pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15 (1964), to recover treble damages for alleged violations of Section 2 of the Sherman Act, 15 U.S.C. § 2 (1964), and Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a) (1964). The jury has returned a verdict for the plain-tiff in the sum of $109,100 single damages, and judgment is to be entered for the plaintiff in the trebled amount of $327,300. Presently before the Court is plaintiff's motion that there be included in the judgment "the cost of suit, including a reasonable attorney's fee," as provided in Section 4 of the Clayton Act. Plaintiff seeks an attorney's fee in the amount of $109,100, and as its cost of suit, exclusive of an attorney's fee, the sum of $6,920.77. Defendants object to the assessment of an attorney's fee in excess of $50,000 and to the allowance of any costs other than those normally taxable under Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920 (1964). Defendants also oppose the allowance of any statutory attorney's fee because of the fact, first disclosed at the hearing on the present motion, that plaintiff has agreed to pay to its counsel the entire amount of any attorney's fee awarded by the Court, in addition to a contingent fee equal to one-third of the trebled damages recovered. The Court will consider, first, what would be a reasonable attorney's fee to be awarded plaintiff without regard to the fee arrangement; second, what, if any, fee should be allowed in this case in view of the nature of plaintiff's fee arrangement; and, finally, what, if any, costs plaintiff is entitled to recover in this action other than those normally taxable by the Clerk.

### I. *Amount of Reasonable Attorney's Fee*

Counsel are in agreement that the question of the amount of attorney's fee to be allowed the successful plaintiff in a private antitrust action is addressed to the sound discretion of the trial court. Montague & Co. v. Lowry, 193 U.S. 38, 48, 24 S.Ct. 307, 48 L.Ed. 608 (1904); Hanover Shoe, Inc. v. United Shoe Machinery Corp., 245 F.Supp. 258, 302 (M.D.Pa.1965), *vacated on other grounds*, 377 F.2d 776 (3d Cir. 1967), *aff'd in part on other grounds, rev'd in part on other grounds*, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968). They further agree that the factors to be considered in making an award include: (1) whether

plaintiff's counsel had the benefit of a prior judgment or decree in a case brought by the Government; (2) the standing of counsel at the bar—both counsel receiving the award and opposing counsel; (3) the time and labor spent by counsel; (4) the magnitude and complexity of the litigation; (5) the responsibility undertaken by counsel; (6) the amount recovered; and (7) the knowledge the court has of the conferences, the arguments that were presented and the work shown by the record to have been done by the attorneys for the plaintiff prior to trial. Hanover Shoe, Inc. v. United Shoe Machinery Corp., *supra*; Twentieth Century Fox Film Corp. v. Goldwyn, 328 F.2d 190, 221 (9th Cir.), *cert. denied*, 379 U.S. 880, 85 S.Ct. 143, 13 L.Ed.2d 87 (1964); Noerr Motor Freight, Inc. v. Eastern Railroad Presidents Conference, 166 F.Supp. 163, 168–169 (E.D.Pa.1958), *aff'd*, 273 F.2d 218 (3d Cir. 1959), *rev'd on other grounds*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961)[1]. It is also not disputed that while these factors provide a helpful standard in fixing such fees, they do not furnish a precise measure. A "reasonable attorney's fee" can only be determined with reference to the particular case, Twentieth Century Fox Film Corp. v. Goldwyn, *supra*; Noerr Motor Freight, Inc. v. Eastern Railroad Presidents Con-

ference, *supra*, and the ultimate test to be applied must be what, in the judgment of the trial court, "it would be reasonable for counsel to charge a victorious plaintiff. The rate is the free market price, the figure which a willing, successful client would pay a willing, successful lawyer." Cape Cod Food Products, Inc. v. National Cranberry Ass'n, 119 F.Supp. 242, 244 (D.Mass.1954) (Wyzanski, J.); Hanover Shoe Inc. v. United Shoe Machinery Corp., *supra*. As stated by the court in Darden v. Besser, 257 F.2d 285, 286 (6th Cir. 1958), "The object always, of course, is to allow just and fair compensation for the services rendered, considering the time and skill employed, the experience brought to bear, and the result achieved."

Having in mind these principles, the Court has considered the following facts disclosed by the record in the present case as they bear upon the amount of the attorney's fee to be awarded. The action was a substantial one. It was a difficult and hard-fought case, which took 19 days to try and required extensive pretrial proceedings over the 6½ year period from the filing of the complaint on February 23, 1962 to the start of the trial on November 6, 1968. In addition to the high degree of professional competence and skill required for the presentation to the jury of a private antitrust action,

---

1. Other factors, some of which are appropriate for consideration in determining a reasonable attorney's fee in a private antitrust case, are included among those set out in Canon 12 of the Canons of Professional Ethics of the American Bar Association, which reads as follows:

   In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other

clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service. *See* Union Leader Corp. v. Newspapers of New England, Inc., 218 F.Supp. 490, 492 (D.Mass.1963), *vacated on other grounds*, 333 F.2d 798 (1st Cir.), *cert. denied*, 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343 (1964); Osborn v. Sinclair Refining Co., 207 F.Supp. 856, 864 (D. Md.1962), *rev'd on other grounds*, 324 F.2d 566 (4th Cir. 1963).

the action involved several novel and difficult legal questions, which had not been authoritatively settled. These included the applicability of the tolling provisions of Section 5(b) of the Clayton Act, 15 U.S.C. § 16(b) (1964) to a proceeding instituted by the Federal Trade Commission against the defendants and the prima facie evidence effect, under the provisions of Section 5(a) of that Act, 15 U.S.C. § 16(a) (1964), of the cease and desist order entered by the Commission in that proceeding. These questions were vigorously contested and required extensive legal research, briefing and oral argument.

Both chief counsel for the plaintiff and chief counsel for the defendants are experienced and competent antitrust lawyers, who are recognized as outstanding in this field, not only in Boston, Massachusetts, where their offices are located, but throughout the country as a whole. There can be no question as to the responsibility undertaken by plaintiff's counsel, or as to the skill they demonstrated in meeting the highly competent defense and prosecuting the action to a successful conclusion.

Counsel actually and necessarily expended a great deal of time and effort in connection with the preparation and trial of this case. In order to prepare their case for trial, counsel were required to make a lengthy investigation of facts and law, to complete a detailed review and analysis of the record of the Federal Trade Commission proceeding, and to engage in extensive discovery by means of requests for admissions, interrogatories, motions for the production of documents, and depositions. Pretrial conferences, hearings on contested discovery motions, and oral argument of controverted legal questions required twelve appearances before the Court at Portland. Detailed pretrial and trial briefs, memoranda and requests for instructions were filed. Interviews with prospective witnesses in Maine, depositions in Maine and Florida, and conferences with representatives of the Federal Trade Commission in Washington took a further eleven days of counsel's time. The conduct of the trial effectively precluded counsel from handling other matters for at least the month of November and the first week of December 1968.

From February 26, 1962 through December 19, 1968 plaintiff's chief counsel, C. Keefe Hurley, Esq., a senior partner in the Boston law firm of Hale & Dorr, spent 752 hours in connection with the case. Earle C. Cooley, Esq., of Mr. Hurley's firm spent 1,257.6 hours on the case: 175.8 hours as an associate from April 9, 1962 to June 30, 1963; 542.4 hours as a junior partner from July 1, 1963 to June 30, 1968; and 539.4 hours as a senior partner thereafter. Other associates in this firm spent 136.6 hours on the case. Senior partners' time of local counsel, whose appearance of record and attendance at all court proceedings in association with non-resident counsel is required by Local Rule 3, amounted to 392.5 hours.[2] Associates' time of local counsel amounted to 3.75 hours.

The amount recovered is substantial, and although plaintiff's counsel were permitted to offer in evidence the final order in the prior Federal Trade Commission proceeding, its effect was limited to the price discrimination claim, and it was of questionable benefit to the plaintiff in establishing the attempted monopoly claim, to which $106,800 of the jury's single damage award was attributable. Compare Cape Cod Food Products, Inc. v. National Cranberry Ass'n, *supra,* with Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., 194 F.2d 846, 858–859 (8th Cir.), *cert. denied,* 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1348 (1952). There can be little doubt that, despite the handicap imposed by the limited resources available to counsel in the preparation of the case, plaintiff was "completely, or

---

2. The firm of Bird & Bird of Waterville, Maine expended 170 hours of partners' time during the period March 1, 1962 to April 1, 1966. Thereafter, the firm of Verrill, Dana, Philbrick, Whitehouse & Putnam of Portland assumed responsibility as local counsel and expended 222.5 hours of partners' time.

substantially completely, victorious" in achieving the award it did. Union Leader Corp. v. Newspapers of New England, Inc., *supra*.

Taking all these matters into consideration, the Court concludes that the sum of $85,000 would be a reasonable attorney's fee under the circumstances of this case.[3]

■ The Court is aware that a number of the cases which discuss attorney's fees in private antitrust actions have appeared to be guided, at least in part, by a percentage of the single or trebled damages recovered. *See, e. g.,* Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., *supra*, 194 F.2d at 859; Milwaukee Towne Corp. v. Loew's Inc., 190 F.2d 561, 571 (7th Cir. 1951), *cert. denied*, 342 U.S. 909, 72 S.Ct. 303, 96 L. Ed. 680 (1952); Clapper v. Original Tractor Cab Co., 165 F.Supp. 565, 587–589 (S.D.Ind.1958), *aff'd*, 270 F.2d 616, 626–628 (7th Cir. 1959), *cert. denied*, 361 U.S. 967, 80 S.Ct. 588, 4 L.Ed.2d 547 (1960); Webster Motor Car Co. v. Packard Motor Car Co., 166 F.Supp. 865, 866 (D.D.C.1955) (Holtzoff, J.), *cross appeal dismissed as moot*, 100 U.S.App.D.C. 161, 243 F.2d 418, *cert. denied*, 355 U.S. 822, 78 S.Ct. 29, 2 L.Ed.2d 38 (1957). The present award would amount to approximately 78% of the single damages and 26% of the trebled damages recovered. Although the relationship between the attorney's fee allowed and the amount of damages recovered varies considerably in the reported cases, these percentages are consistent with those disclosed in a number of recent antitrust cases which have been called to the Court's attention by counsel.[4] Furthermore, as Judge Wyzanski observed in Union Leader

Corp. v. Newspapers of New England, Inc., *supra*, 218 F.Supp. at 493:

The percentage test is relevant in many situations. Yet considerations respecting the type of professional skill required and the extent of work necessary are more important than percentage considerations where, as in matters arising under 15 U.S.C. § 15, the claim for an attorney's fee sounds in tort and is an additional element of damages allowable to a person who has sustained provable losses.

See also Noerr Motor Freight, Inc. v. Eastern Railroad Presidents Conference, *supra*, 166 F.Supp. at 170. The Court also has noted that the present award would reflect for chief counsel a senior partner's rate per hour of about $40, a junior partner's rate per hour of about $30 and an associate's rate per hour of about $20. For local counsel, the award would reflect an hourly rate of approximately $20. These rates appear reasonable in light of the Court's knowledge of the customary charges of attorneys engaged in similar types of litigation in this area. These hourly rates are also in line with those reflected in a number of recent antitrust cases to which the Court's attention has been directed.[5]

## II. *Effect of Plaintiff's Fee Agreement*

■ At the hearing on the present motion plaintiff's counsel, pursuant to defendants' request, disclosed that their fee agreement with plaintiff called for a fee equal to one-third of any recovery, by judgment or settlement, and, in addition, any amount awarded by the Court as a reasonable attorney's fee.[6] Upon disclosure of this agreement, the Court re-

---

3. This award would include disbursements, but not taxable costs. *See* Union Leader Corp. v. Newspapers of New England, Inc., *supra*, 218 F.Supp. at 493.

4. For purposes of comparison, these cases are collected in Appendix I to this opinion.

5. These cases are collected in Appendix II to this opinion.

6. It was also revealed that plaintiff had paid its counsel a $1500 retainer and that plaintiff was to be responsible for all expenses. Plaintiff's counsel have since informed the Court that the $1500 retainer and the amount paid as expenses are to be deducted from the recovery in computing the contingent fee.

quested further briefing on the question whether, in light of the nature of the agreement, it could properly make any award of a "reasonable attorney's fee" under Section 4 of the Clayton Act. In their supplemental memorandum on counsel fees, defendants have taken the position that such an arrangement is "so antipathetic to the objective and spirit of Section 4" that no such award should be made. The Court agrees.

■ Admittedly, the language of the Clayton Act is mandatory: "Any person who shall be injured * * * may sue * * * and *shall* recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." (Emphasis added). However, it is apparent that for the Court to award an attorney's fee in this case would be within neither the language nor the purpose of the Act. First, such an award would be in direct conflict with the express language of Section 4. The statutory language makes clear the intent of Congress that the attorney's fee is to be part of the recovery by the plaintiff, that is, by the "person * * * injured," and is to reimburse the plaintiff for a "cost of suit" incurred by him.[7] Plaintiff having pledged in advance any Court award, such an award would not reimburse plaintiff for a "cost of suit" which it has incurred. Indeed, any award the Court might make would not reimburse plaintiff in any sense, since it would accrue entirely to counsel.

■ It is even more apparent that if the Court were to award what it has concluded would be a reasonable attorney's fee in this case, it would be by acquiescence a party to the frustration of the purpose of Congress in enacting the attorney's fee provision of the Clayton Act. Although the legislative history appears to be silent in this respect, it is obvious that the Congress, desiring to encourage the prosecution of private treble damage actions, *see generally* Minnesota Mining and Manufacturing Co. v. New Jersey Wood Finishing Co., 381 U.S. 311, 318–322, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965), intended, by providing for the award of a reasonable attorney's fee, that a claimant's treble damage recovery should not be substantially diminished by the necessity of paying the fees of his attorneys out of his recovery. By the present fee arrangement counsel are, in effect, seeking to reap the benefit of a provision whose advantage was clearly meant to accrue to their client.[8] The Court declines to be a participant in such a substantial misuse of the statute.

Beyond this, the Court cannot in good conscience make any award which would increase an attorney's fee already nearly 30% more than it has concluded is reasonable. Were the Court to disregard the fee agreement and award the $85,000 fee, counsel would be receiving approximately $190,000, twice what the Court has found to be reasonable and 75% more than plaintiff's counsel themselves claimed as a reasonable fee prior to the disclosure of the fee agreement. Their total fee would then amount to approximately 175% of the single damages and 58% of the trebled damages recovered. It would reflect for chief counsel a senior partner's rate per hour of about $90, a junior partner's rate per hour of about $70, and an associate's rate per hour of about $45. It is evident from Appendices I and II that such compensation would be rare, if not unprecedented. As the court stated in Milwaukee Towne Corp. v. Loew's Inc., *supra*, 190 F.2d at 570, "[T]his exorbitant allowance, if it should become a precedent, is calculated to bring both the bench and the bar into public disrepute."

---

7. As Judge Wyzanski observed in Union Leader Corp. v. Newspapers of New England, Inc., *supra*, 218 F.Supp. at 493, " * * * the claim for an attorney's fee sounds in tort and is an additional element of damages allowable to a person who has sustained provable losses."

8. *See* First Iowa Hydro Electric Coop. v. Iowa-Illinois Gas & Electric Co., 245 F.2d 630 (8th Cir. 1957) and cases cited therein at 632.

The combined research of the Court and counsel has failed to disclose any reported case involving a counsel fee award under Section 4 of the Clayton Act which appears to be helpful one way or the other on the present problem. Plaintiff's counsel have cited two cases, Milwaukee Towne Corp. v. Loew's, Inc., *supra*, 190 F.2d at 570, and Noerr Motor Freight, Inc. v. Eastern Railroad Presidents Conference, *supra*, 166 F.Supp. at 169, for the proposition that a court, in determining a reasonable attorney's fee under Section 4 of the Clayton Act, should disregard any arrangement existing between a plaintiff and its counsel. See also Webster Motor Car Co. v. Packard Motor Car Co., *supra*, 166 F.Supp. at 866. However, it is apparent that the courts in these cases were saying no more than that the arrangement between counsel and his client is not relevant to the determination, pursuant to Section 4, of the *amount* of a reasonable attorney's fee. In none of these cases was the court called upon to consider the particular question which is raised here, since it does not appear that the fee agreements in these cases were similar to the instant one.

For the foregoing reasons, the Court concludes that, in view of the nature of plaintiff's fee arrangement, it cannot properly make any award of a "reasonable attorney's fee" under Section 4 of the Clayton Act in this case.[9]

III. *Allowable Costs*

■ In addition to attorney's fees, plaintiff claims $6,920.77 as its "cost of suit," including long distance telephone charges, travel and maintenance expenses of counsel, travel and maintenance expenses of plaintiff's principal stockholder and officer, and fees and expenses paid to its two expert witnesses. Plaintiff asks the Court to rule that "cost of suit" as used in Section 4 of the Clayton Act means the "full, reasonably incurred expenses of the litigation," and not simply those costs which are normally taxable under Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920 (1964). However, plaintiff frankly concedes that there is no present authority for this construction of the Act, and that in fact, the same contention has been specifically or implicitly rejected in Twentieth Century Fox Film Corp. v. Goldwyn, *supra*, 328 F.2d at 223; Brookside Theatre Corp. v. Twentieth Century Fox-Film Corp., 11 F.R.D. 259, 265 (W.D.Mo.1951); Union Carbide and Carbon Corp. v. Nisley, 300 F.2d 561, 586 (10th Cir. 1961), *petition for cert. dismissed sub nom* Wade v. Union Carbide and Carbon Corp., 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.2d 46 (1962); Straus v. Victor Talking Machine Corp., 297 F. 791, 806–807 (2d Cir. 1924); Hanover Shoe Inc. v. United Shoe Machinery Corp., *supra*, 245 F.Supp. at 305; and Clapper v. Original Tractor Cab Co., *supra*, 165 F.Supp. at 589–590. In accord with these authorities, this Court holds that the only costs recoverable by the plaintiff in this action are those which are taxable by the Clerk, subject to review by this Court, under Fed.R. Civ.P. 54(d) and 28 U.S.C. § 1920 (1964), upon the presentation by the plaintiff of a proper bill of costs.

In accordance with the foregoing, plaintiff's motion that there be included in the judgment to be entered in this case a reasonable attorney's fee, and costs in addition to those normally taxable under Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920 (1964), is denied.

Judgment will be entered for the plaintiff in the amount of $327,300 and costs to be taxed by the Clerk.

---

9. The Court is aware that the effect of this ruling is to permit the defendants to benefit from an undeserved "windfall" of $85,000, the amount of the "reasonable attorney's fee" to which the plaintiff is properly entitled. The Court is also aware that the "reasonable attorney's fee" fixed by a court pursuant to the mandate of Section 4 of the Clayton Act is not necessarily determinative of the amount which counsel may reasonably charge their client. However, unless plaintiff's counsel are willing to waive any claim to a fee in excess of the one-third contingent fee which plaintiff has agreed to pay for their services, the Court sees no way to avoid the present result.