Stan KANE and Stan Kane Home Improvement Center, Inc., Plaintiffs,

v.

**MARTIN PAINT STORES, INC., and Martin Paint Franchise Corporation, Defendants.**

No. 70 Civ. 4438.

United States District Court, S. D. New York.

Sept. 27, 1977.

Bandler & Kass, New York City, Jerry S. Cohen, Herbert E. Milstein, Michael D. Hausfeld, Washington, D.C., for plaintiffs; David Fisher, New York City, of counsel.

Fellner & Rovins, New York City, for defendants.

LASKER, District Judge.

This is a petition for attorney's fees by counsel for Stan Kane Home Improvement

Center, Inc., (Kane), a plaintiff in this action for violations of the anti-trust laws and common law fraud. Kane emerged from a four day jury trial with a verdict for $12,837. on its price-fixing claim and $10,000. on its claim for an illegal tying arrangement.

Kane was represented by the Washington, D.C. law firm of Kohn, Milstein & Cohen (petitioner), and in particular by Jerry S. Cohen. Cohen was assisted at various times throughout the seven years that the case was being litigated by his partner Herbert E. Milstein and his associate Michael D. Hausfeld. In support of this petition, Cohen has submitted two sworn statements setting forth the basis for petitioner's request for fees in the amount of $86,382. In addition, Cohen testified at a hearing on July 21, 1977 at which he was cross-examined on the contents of these two statements. Counsel for the defendants has submitted a memorandum of law in opposition to the petition and a post-hearing critique of Cohen's submissions and testimony to the court. The defendants oppose the grant of any fee award whatsoever.

Upon a careful consideration of all this material, and based on our familiarity with the case throughout its pendency before the court, we conclude that petitioner entitled to an award of attorneys fees in the amount of $50,670.96.

## I.

In determining an award of attorney's fees, the starting point is the amount of time spent in the prosecution of the action, by whom the services were rendered and the rates charged. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). Computation of a figure based on these factors provides a base, or "lodestar" amount, see *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168 (3d Cir.1973), reaff'd at 540 F.2d 102, 116–117 (3d Cir. 1976), which is then to be adjusted according to "less objective factors." *City of Detroit v. Grinnell Corp., supra*, 495 F.2d at 471.

Cohen has submitted a breakdown of time reflecting the total number of hours spent each year by the three attorneys who worked on the case, the hourly rate charged and an estimate of how the time was spent. These figures are based on his review of weekly time sheets for each attorney. The sheets themselves reflect only the number of hours worked; they give no indication of how the time was spent. Cohen allocated the time on the basis of a review of office files and his knowledge, as attorney in charge of the litigation, of the work that was done.

Defendants attempt to discredit Cohen's presentation by comparing the hours spent as reflected on the weekly time sheets with the visible work product, such as affidavits and memoranda submitted on motions, interrogatories, etc. Their analysis questions both the accuracy and the reasonableness of the hours alleged to have been spent. We do not find that defendants' critique seriously undermines the basic structure of Cohen's presentation. For the most part defendants' arguments are based on speculation and unjustified assumptions regarding the extent to which hours devoted to a case would necessarily be reflected in publicly available work product. We are satisfied that Cohen and his associates recorded their time with at least general accuracy and conscientiousness, and worked with reasonable, if not extraordinary efficiency.

We do agree with defendants, however, that petitioner would do well to require its attorneys to record their expenditure of time more precisely. In particular, the failure to record how hours are spent and the resultant need for Cohen to estimate this information injects an element of speculation into his presentation. Although his submissions no doubt reflect a good faith and generally reliable approximation of the breakdown of expenditure of time, there is no allowance at all for time devoted to relatively administrative tasks, which we are entitled to assume must have been effected to some degree by the attorneys, even if secretarial and para-legal assistance was also utilized. Time devoted to such

matters should not be billed at the same rate as time in which more professional skills were being used. See *City of Detroit v. Grinnell Corp., supra,* 495 F.2d at 473; *Blank v. Talley Industries,* 390 F.Supp. 1, 4 (S.D.N.Y.1975). Nor is it possible, as a result of failure to be more precise in recording time, to determine which, if any, hours may have been duplicative of work performed by another attorney. Although we are prepared to believe that duplication was not extensive, we cannot literally accept Cohen's assurance that there was none at all.[1] Finally, Cohen's testimony at the hearing left us with the distinct impression that his entries may at times reflect fairly general approximations.[2]

■ Thus, although we acknowledge Cohen's integrity and high competence, his firm's failure to keep more precise records is a factor to be considered in computing fees. Cf. *Blank v. Talley Industries, Inc., supra,* 390 F.Supp. at 4. The attendant uncertainties that thereby arise should, in fairness, be resolved against the petitioner. For these reasons, and in the absence of a more precise corrective device, we believe it is appropriate to reduce by 10% petitioner's figures with respect to hours worked on this case.

The hourly rates recorded for each attorney on petitioner's statement compare reasonably with rates charged by attorneys of petitioner's standing[3] in New York and Washington, D.C. for the conduct of major litigation. In view of the considerations set forth below, however, we think it appropriate to impose a ceiling on the partners' charges of $100. per hour.

The following figures reflect our calculations:

| 1971 | Hours (−10%) | Hourly Rate | Total |
|---|---|---|---|
| Jerry S. Cohen | 92.70 | $ 100. | $ 9,270.00 |
| Herbert E. Milstein | 78.97 | 65. | 5,129.80 |
| Michael D. Hausfeld | .45 | 35. | 15.75 |
| | | | $14,415.55 |
| 1972 | | | |
| Jerry S. Cohen | 22.50 | $ 100. | $ 2,250.00 |
| Herbert E. Milstein | 26.10 | 65. | 1,696.50 |
| | | | $ 3,946.50 |

1. For instance, when Hausfeld became heavily involved in the case, replacing Milstein as Cohen's principal assistant, he must have spent a good deal of time reviewing and familiarizing himself with the case file and the discovery materials to date, with which Milstein was already conversant. This time should not be charged to the defendants. See *FLM Collision Parts, Inc. v. Ford Motor Co., infra,* 411 F.Supp. 627 at 633, *rev'd on other grounds,* 543 F.2d 1019 (2d Cir.1976); *Blank v. Talley Industries, Inc., supra,* 390 F.Supp. at 4. Also, Hausfeld attended some pretrial conferences with Cohen, traveling all the way from Washington, D.C. to do so and billing, according to Cohen's testimony, roughly half a day for each one. In addition, Hausfeld attended the trial with Cohen. We do not question Hausfeld's competence or value to Cohen at this time, but we agree with defendants that this case was simply not of sufficient complexity to require two trial attorneys.

2. He stated, for example, that because of the nature of his work (i. e., mostly plaintiffs' antitrust and securities litigation) he does not keep track of such brief items as phone calls, and records his time only for periods of a half hour or more, rounded out to the nearest half hour. He also stated that it was his practice to bill half a day for attendance at pretrial conferences. These rarely lasted more than 30 minutes, however, and although the excess time no doubt reflects Cohen's travel time from Washington, D.C., we see no reason why defendants should be charged a premium because of Kane's choice of out-of-town counsel, at least where there is clearly no dearth of qualified attorneys here in New York City. In the course of this litigation Cohen and his assistants made numerous trips to New York.

3. Petitioner enjoys a distinguished reputation and has been involved in a number of significant cases in the anti-trust field. See Memorandum in Support of Petition at 10–14.

| 1973 | Hours (−10%) | Hourly Rate | Total |
|---|---|---|---|
| Jerry S. Cohen | 41.40 | $ 100. | $ 4,140.00 |
| Herbert E. Milstein | 31.27 | 70. | 2,188.90 |
| | | | $ 6,328.90 |
| **1974** | | | |
| Jerry S. Cohen | 71.10 | $ 100. | $ 7,110.00 |
| Michael D. Hausfeld | 135.90 | 50. | 6,795.00 |
| | | | $13,905.00 |
| **1975** | | | |
| Jerry S. Cohen | 50.85 | $ 100. | $ 5,085.00 |
| Michael D. Hausfeld | 56.70 | 75. | 4,252.50 |
| | | | $ 9,337.50 |
| **1976** | | | |
| Jerry S. Cohen | 122.10 | $ 100. | $12,210.00 |
| Herbert E. Milstein | 2.50 | 100. | 250.00 |
| Michael D. Hausfeld | 34.65 * | 85. | 2,945.25 |
| | | | $15,405.25 |
| TOTAL | | | $63,338.70 |

* In addition to deducting 10%, Hausfeld's trial firm has also been excluded. See note 1, *supra*.

---

In calculating an award under Section 4 of the Clayton Act, only work devoted to the successful recovery of treble damages may be compensated. *FLM Collision Parts, Inc. v. Ford Motor Co., supra* note 1, 411 F.Supp. at 633 and cases cited there. However, to the extent that work bore on both a successfully asserted anti-trust claim and other, noncompensable claims, that work may be fully taken into account. *Id.* Thus, petitioners are entitled to recover fees for time spent on the price-fixing and tie-in claims in this case; and hours devoted exclusively to recovery of 1) monies due and owing, 2) fraud or 3) the Robinson-Patman claim may not be considered in fixing the award. Calculation of this factor is necessarily an approximation. Based on our knowledge of the case, which involved four substantive motions, numerous conferences and a four day jury trial, we believe that a fair factor would be 80%.

There is no question that the case related principally to the claims of price-fixing and an illegal tying arrangement. There was virtually no dispute that the defendants owed Kane $7,230.36, and this amount was awarded on a motion for summary judgment. The Robinson-Patman claim was dismissed early in the case for failure to allege the requisite nexus between price discrimination and interstate activity. And although the allegation of common law fraud remained in the case through trial, a very large proportion of the proof offered both on liability and damages for this claim was duplicative of proof offered with respect to the price-fixing and tie-in claims. For instance, although defendants argue that most of Stan Kane's trial testimony related exclusively to the contention of fraud in the inducement of the franchise agreement, his testimony related also to the

question of the tie-in. In particular, much of it related to the issue of coercion in obtaining Kane's agreement to purchase certain products exclusively from the defendants.

Reducing the final figure of $63,338.70 above, by 20%, produces a base or "lodestar" figure of $50,670.96.

Having arrived at a starting figure, it is necessary to take a number of other considerations into account which fall broadly under the rubric "risk of litigation." *City of Detroit v. Grinnell Corp., supra.* This aspect of the inquiry goes to the contingency factor: the probability of success at the outset of the litigation. It is appropriate to increase the basic hourly fee in proportion to the risk of failure, and hence of receiving no compensation at all. Conversely, "the greater the probability of success . . . the less this consideration should serve to amplify the basic hourly fee." *Id.* at 471. Related considerations are the complexity of the task undertaken and the amount ultimately recovered. *Id.*

Petitioner points out that the case was undertaken on a wholly contingent basis, and counsel have expended long hours over a seven year period for nothing other than their expectancy with regard to this application. In view of these facts, petitioner argues that an additur of 20% to the "lodestar" amount is in order. Although we recognize the importance of these and other considerations, we believe there are countervailing factors of at least equal, if not greater, weight.

To begin with, it is simply not the case, as petitioner contends, that "the factual and legal contexts of this case were extremely complex." (Memorandum in Support of Petition at 8) The facts, and with regard to the price-fixing claim, the law as well, were remarkably straightforward in comparison with most anti-trust litigation. Essentially, the dispute involved examination of the relationship between a small franchisee of a local hardware store chain and his franchisor, who is by no means a corporate giant. Although document discovery was not negligible, it was not nearly as extensive as is often the case in anti-trust matters. Relatively few individuals had to be examined in order to complete the factual picture of the events in question. Indeed, what complexity existed in the case stemmed in large part from the rather small scale and provinciality of the dispute and resultant questions regarding the applicability of the anti-trust laws. Once this matter was resolved, however, liability on the price-fixing claim was established in large part on motion for summary judgment. The sole factual issue that remained to complete the claim (whether the two corporate defendants were in fact so closely related that the actions of one are fairly attributable to the other) was so straightforward and virtually uncontestable by the defendants that the court directed a verdict at the close of the evidence.

It is true, on the other hand, that a good deal of contingency lay in the question of the amount of damages to be recovered. This, however, is at best a double edged sword. For although it might seem at first glance to entitle counsel to a large additur, it raises other questions that point in the opposite direction. This is emphatically not a case where counsel succeeded either against long odds or in recovering a substantial damage award. Indeed, Kane's ultimate recovery was a modest one, and one, we believe, that could reasonably have been anticipated by a person familiar with the facts of the case. Proof of damage resulting from the violations was quite speculative. We believe that the jury's award represented a reasonable determination under the circumstances.

■ In sum, we cannot in good conscience approve an increase in the base or "lodestar" figure set forth above. The case presented fairly straightforward issues of anti-trust law in a factually uncomplicated setting. Probability of successfully establishing liability was exceptionally high, but damages were speculative at best. And although we do not question the competence of petitioner nor the sincerity with which the claims were pursued, we do believe the size of the recovery should have

come as no surprise. In our view the unadjusted fee of $50,670.96 is fair compensation for prosecution of this action (where single damages amounted only to $22,837.)[4] and an appropriately heavy burden to impose on the defendants in view of the policies underlying Section 4 of the Clayton Act.

## II.

■ There remains outstanding the matter of costs to be taxed to the defendants. At the hearing on counsel fees, Cohen agreed to abandon his request for costs above those clearly recoverable under 28 U.S.C. § 1920. This leaves for determination plaintiff's statement of costs in the amount of $2,284.37, which represents filing fees and the expense of deposition transcripts. We agree that these items are recoverable, except for transcripts of depositions which were paid for by the defendants. See 4 Moore's Federal Practice ¶ 26.- 82 at 574–75 (2d Ed. 1976). Therefore, the costs of the transcripts of the depositions of both Kane and Brinen ($598.50) should be deducted, since these were noticed and paid for by the defendants, and hence, represented no expense to Kane. (Defendants' Analysis and Opposition to Petition for Fees and Expenses at 22) Accordingly, Kane is entitled to recover $1,685.87 in costs in this action.

For the foregoing reasons, petitioner is entitled to an award of attorney's fees in the amount of $50,670.96, and Kane may recover $1,685.87 in the costs of this action.

Judgment incorporating these rulings will be filed herewith.

It is so ordered.

## JUDGMENT

1. Plaintiffs, Stanley Kane and Stan Kane Home Improvement Center, Inc., filed the Complaint herein on October 14, 1970. The Complaint alleged five causes of action, the first charging Defendants with violations of Section 1 of the Sherman Act;

Count II alleged a violation of Section 3 of the Clayton Act, as Amended; Count III alleged a violation of Sections 2(a), 2(d) and 2(e) of the Clayton Act, as Amended, for various price discriminations engaged in by Defendants; Count IV alleged that Plaintiffs had been fraudulently induced to enter into the franchise agreement with Defendants; and Count V claimed that Defendants had money due and owing to Plaintiffs as a result of an actual accounting of physical inventory returned to Defendants at the termination and/or expiration of Plaintiffs' franchise agreement with Defendants.

2. By order of this Court of October 11, 1974, Plaintiff, Stanley Kane, was dismissed as an individual plaintiff and Plaintiff's price discrimination claims under Sections 2(a), 2(d) and 2(e) of the Clayton Act, as Amended were dismissed. No appeal was taken from that decision.

3. By order of this Court dated February 4, 1976, the Court determined as a matter of law that Paragraph 6 of Defendants' franchise agreement constituted an illegal price-fixing arrangement in violation of Section 1 of the Sherman Act, insofar as it fixed, maintained and stabilized the retail prices of non-Martin products sold by Plaintiff.

4. By order of the Court dated February 4, 1976, the Court found that Defendants were liable to Plaintiff in the amount of $7,230.36 for monies due and owing as a result of the physical inventory of merchandise returned by Plaintiff to Defendants at the termination or expiration of Plaintiff's franchise agreement. This Court on that date found that interest on said amount should accrue at the annual rate of 7½% from September 1, 1970, to August 31, 1972, and at the annual rate of 6% thereafter.

5. The remainder of the case was set for trial and tried by a jury commencing on December 18, 1976. On December 28, 1976, the jury returned a verdict in favor of Plaintiff as to liability on Counts II and IV as follows: (a) that paragraph 4 of Defend-

---

4. There is no question that in appropriate cases, an award in excess of the single damages may be appropriate. See cases collected in Appendix I of *Farmington Dowel Products Co. v. Forster Mfg. Co.*, 297 F.Supp. 924, 931 (D.Me.1969).

ants' franchise with Plaintiff constituted an illegal tying arrangement in violation of Section 3 of the Clayton Act, as Amended; and (b) that Defendants fraudulently induced Plaintiff to enter into its franchise agreement with Defendants.

6. Prior to the submission of these issues to the jury, the Court, as a matter of law, directed a verdict in favor of Plaintiff with regard to liability under Count I, the Court ruling that Defendants' franchise agreement constituted an illegal price-fixing arrangement in violation of Section 1 of the Sherman Act, in that it illegally fixed, maintained and stabilized the retail price of Martin goods sold by Plaintiff. The issue of damages, however, was determined to be a question for the jury.

7. The jury returned a verdict in favor of Plaintiff in the following amounts as to each Count on which Defendants were found liable to Plaintiff:

A. Price fixing — $12,837.00
B. Tie-in $10,000.00
C. Fraud No damages

8. After the entry of the above verdicts in the above amounts, the parties hereto made numerous motions with respect to liability and damages, all of which Motions the Court has denied, and it appearing that the entry of a Final Judgment is appropriate, it is this 27th day of September, 1977, hereby

ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

(1) Paragraph 6 of Defendants' franchise agreement with Plaintiff constituted an illegal price-fixing arrangement in violation of Section 1 of the Sherman Act, and the Plaintiff sustained damages in its business and property in the amount of $12,837.00 as a result of Defendants' enforcement of said illegal provision and that a judgment enter of treble said amount for $38,511.00 with interest thereon at 6% per annum from the date of judgment.

(2) That paragraph 4 of Defendants' franchise agreement constituted an illegal tying arrangement in violation of Section 3 of the Clayton Act, as Amended, and that

Plaintiff was damaged in its business and property in the amount of $10,000.00 as a result of Defendants' enforcement of said illegal provision, and that a judgment enter of treble said amount for $30,000.00 with interest thereon at 6% per annum from the date of judgment.

(3) Defendants fraudulently induced Plaintiff to enter into its franchise agreement with Defendants, but Plaintiff suffered no damages as a result of said fraud.

(4) A judgment is entered for $10,191.66, being the amount of $7,230.36 as monies due and owing the plaintiff as of September 1, 1970, for merchandise returned with interest of $2,961.30 calculated on said amount as set forth in Paragraph 4 with interest thereon at the rate of 6% per annum from the date of judgment.

(5) Plaintiff is entitled to its costs for prosecuting this action, which costs are determined to be in the amount of $1,685.87 and a judgment is entered in that amount.

(6) Defendants are liable to plaintiff for plaintiff's reasonable attorneys' fees pursuant to Section 4 of the Clayton Act, as amended, which are determined to be in the amount of $50,670.96, and a judgment is entered in that amount.