BEECH CINEMA, INC.; Twin Beech Cinema, Inc.; Kisco Cinema, Inc.; and Yorktown Heights Theatre, Inc., Plaintiffs,

v.

TWENTIETH CENTURY FOX FILM CORP., and General Cinema Corporation, and General Cinema Corp. of New York, Inc., Defendants.

No. 76 Civ. 4406 (WCC).

United States District Court,
S. D. New York.

Nov. 23, 1979.

Kaufman & Kaufman, New York City, for plaintiffs; Jon M. Kaufman, New York City, of counsel.

Rogers & Wells, New York City, for defendant Twentieth Century-Fox Film Corp.; Guy C. Quinlan, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

This action charging violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, is before the Court on plaintiffs' motion for an award of attorneys' fees pursuant to 15 U.S.C. § 15 and for an injunction against future violations.

The complaint alleges a conspiracy between defendant Twentieth Century-Fox Film Corporation ("Fox") and General Cinema Corporation ("General Cinema"), by which it was agreed first that Fox would give plaintiffs, a group of theaters in Northern Westchester County, New York owned by Ronald Lesser, less favorable treatment than General Cinema with respect to the royalties charged for the exhibition of Fox films, then that Fox would refuse to license plaintiffs to exhibit the more desirable Fox films, and ultimately that Fox would refuse to license any of its films for exhibition by plaintiffs. Prior to trial, plaintiffs settled its claim against General Cinema for $10,000.

Following a five-day trial, the jury returned a verdict in favor of plaintiffs on the claims of refusal to license Fox films, finding single (untrebled) damages in the amount of $48,933, and in favor of Fox on the claim of discrimination in royalties.

The supporting affidavits of plaintiffs' attorneys assert that they devoted to the case 1,059¾ hours of partners' time at a normal billing rate of $125 per hour and 33 hours of associates' time at $75 per hour. The fees chargeable for attorneys' services thus total $134,943.75. However, plaintiffs seek an award of only $125,000 for attorneys' fees plus their actual disbursements of $12,051.10.

Fox does not oppose the granting of reasonable attorneys' fees and costs, but urges that the amounts sought are grossly excessive because (1) plaintiffs were successful on only some of their claims; (2) the allowance for attorneys' fees should in no case exceed the single damages awarded; (3) the total number of hours spent was excessive, particularly in view of the taking of depositions which were not offered in evidence and the duplication of effort by the partners Jon M. Kaufman and Leonard Kaufman; (4) there was a disproportionate amount of partners' time relative to associates' time; and (5) many of the disbursements were not taxable costs.

*Attorneys' fees*

The seminal cases on the subject of attorneys' fees, at least in the Second Circuit, are *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("Grinnell I"), and *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093 (2d Cir. 1977) ("Grinnell II"). Although these cases were class actions, the same principles have been applied in ordinary private antitrust actions, *Kane v. Martin Paint Stores, Inc.*, 439 F.Supp. 1054, 1055 (S.D.N.Y.1977, Lasker, J.), aff'd, 578 F.2d 1368 (2d Cir. 1978) ("*Kane*"); *FLM Collision Parts, Inc. v. Ford Motor Co.*, 411 F.Supp. 627, 632–33 (S.D.N.Y. Griesa, J.), aff'd in part and rev'd in part on other grounds, 543 F.2d 1019 (2d Cir. 1976), cert. denied, 429 U.S. 1097, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977) ("*FLM*").

■ Under *Grinnell I* and *Grinnell II*, the starting point in determining an award of attorneys' fees is the amount of time spent in prosecution of the action and the hourly rates normally charged therefor. The product of multiplying the number of hours by the hourly rate constitutes a base or "lodestar" figure which is then adjusted in accordance with "less objective factors." *Grinnell I, supra*, 495 F.2d at 471; *Grinnell II, supra*, 560 F.2d at 1098. Among the latter factors are "the magnitude and complexity of the litigation, the amount recovered and litigation risks." *FLM, supra*, 411 F.Supp. at 632.

■ After consideration of the affidavits submitted in support of and in opposition to the motion, in the light of the Court's familiarity with the case, the Court concludes that the total number of hours spent by plaintiffs' counsel was not excessive. Plaintiffs' counsels' affidavits describing the work done and explaining the reasons therefor are unusually detailed and persuasive. Although, as defendant points out, there are depositions which were taken but not offered in evidence, they served a significant discovery function. Moreover, there was no significant degree of duplication of services by the two partners.

■ However, there was a disproportionate ratio of partners' time to associates' time. Many of the functions performed by the partners could have been satisfactorily accomplished by associates, with a considerable saving in fees. Taking this factor into account, in conjunction with the considerable skill of the partners, and particularly of Jon Kaufman, who was lead counsel at the trial, the Court concludes that an overall weighted average of $100 per hour is a reasonable hourly charge rate.

■ Time devoted exclusively to prosecuting unsuccessful claims is not compensable. *Kane, supra*, 439 F.Supp. at 1057; *FLM, supra*, 411 F.Supp. at 633. Of course, to the extent that the time was applicable to both successful and unsuccessful claims, it is properly includible. *Kane, supra*, 439 F.Supp. at 1057; *FLM, supra*, 411 F.Supp. at 633.

Upon consideration, the Court concludes that two-thirds of the total time spent, or 728½ hours was properly spent in preparing for trial, trying and briefing the successful claims. Multiplying this figure by a weighted average hourly rate of $100 per hour, yields a "lodestar" figure of $72,850.

Plaintiff has not asked for any increase in the "lodestar" figure unless the Court should determine that "not all of counsel's hours were billable." The Court has determined that all of the hours devoted to prosecution of the successful claims are billable, though at an average rate reflecting that some of the work done by partners could satisfactorily have been performed by associates. Whether this would trigger plaintiffs' request for an increase in the "lodestar" figure is unclear. In any event, plaintiffs have suggested no reason why such an increase is justified in this case. As antitrust cases go, it was, at most, of average magnitude and complexity. The amount recovered was less than the "lodestar" figure. And the "risk of litigation" is less a factor in a case where an attorney is retained to represent a single plaintiff, or small group of plaintiffs, than in a class action or stockholders' derivative suit where the attorney represents a vast number of

interested persons or companies with relatively small individual claims, who have not selected him to represent them and from whom he cannot expect to receive any direct compensation. He is more akin to a "private attorney general," creating a fund for the common benefit of the class.

On the other hand, the Court perceives no reason why the "lodestar" figure should be reduced, notwithstanding the fact that it exceeds the amount of the jury's verdict. Fox cites a number of decisions in which the attorneys' fees allowed were less than the recovery and at least one case, *Trans World Airlines, Inc. v. Hughes*, 312 F.Supp. 478, 484 (S.D.N.Y.1970), *modified on other grounds*, 449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973) which states that in fixing the attorneys' fees, the damage award is important "since that is the amount produced through the efforts of counsel." However, *Trans World* and all of the other cases cited, with the sole exception of *FLM, supra*, were decided before *Grinnell* shifted the primary emphasis from the size of the recovery to the amount of time reasonably expended and the reasonable hourly rate charged therefor. And in many other cases, the fee has exceeded the untrebled damages. For example, in *Kane, supra*, Judge Lasker fixed the fee at the "lodestar" figure of $50,670.96, which was more than double the single damages of $22,837.

In light of all the foregoing considerations, the Court concludes that attorneys' fees of $72,850 are reasonable in this case.

*Costs*

Fox objects to the inclusion in the disbursements for which plaintiffs seek to be reimbursed such items as expert witness fees, travel expenses, "transportation," messenger service, secretarial overtime, long distance telephone calls, extraordinary postage, and meals with witnesses.

Although such items are properly billable to a client, they are not properly includible in an allowance for costs under 15 U.S.C. § 15. See, *e. g., Wahl v. Carrier Manufacturing Co., Inc.*, 511 F.2d 209, 216–17 (7th Cir. 1975). The proposed bill of costs includes under the title "printing" the costs of photocopying. Such costs are not allowable except to the extent that the photocopies were used as court exhibits or were furnished to the Court or to opposing counsel. Plaintiffs should submit a revised bill of costs to be taxed by the Clerk of the Court in the usual manner.

*Injunction*

Plaintiffs have submitted a proposed judgment order including an injunction which would restrain Fox and its officers, employees and agents (1) from licensing any feature motion picture for exhibition in any theater in Northern Westchester County unless plaintiffs shall have been given an equal opportunity (a) to bid or negotiate therefor and (b) to obtain equally favorable terms as to playing time, play dates, house allowances, royalty percentages and advertising contributions by Fox; and (2) from amending or modifying any license agreement or arrangement to allow more favorable terms than those granted to plaintiffs.

Fox urges that the proposed prohibition against the granting of more favorable license terms to others would restrain conduct which is perfectly legal, so long as the disparity results from unilateral action of Fox and not from a conspiracy with others to benefit them or to injure plaintiffs.

In this respect Fox is, of course, correct. The charging of different royalties to different exhibitors, even comparable exhibitors, in the absence of a conspiracy, does not violate the Sherman Act. See, *e. g., Lamb's Patio Theater, Inc. v. Universal Film Exchanges, Inc.*, 582 F.2d 1068 (7th Cir. 1978). Moreover, plaintiffs did not establish to the satisfaction of the jury that there had been a conspiracy to discriminate against plaintiffs in the matter of royalties, and an injunction is inappropriate where no violation has occurred as is threatened.

Defendant further contends that an injunction preventing the refusal to license Fox pictures for exhibition by plaintiffs is unnecessary since on August 9, 1979,

after the verdict herein, Fox's attorney, Guy C. Quinlan of Rogers & Wells, wrote plaintiffs' attorney, Jon M. Kaufman, stating that "pending the final disposition of [this] action, the theaters owned by Mr. Lesser will be given the opportunity to compete for pictures distributed by Fox."

Such a letter is not a substitute for injunctive relief. There is no penalty for violation. The undertaking can be withdrawn at any time. And, by its own terms, it extends only until final disposition of the action.

However, the Court agrees with Fox that the proposed injunction should be modified to make clear that Fox will not be required to license motion pictures for exhibition by plaintiffs if plaintiffs are in default in the payment of royalties on previous Fox pictures exhibited by them.

*Damages*

Fox urges that the trebled damages should be reduced by $10,000, the amount which plaintiffs received from General Cinema in settlement of the claim against it. Plaintiffs do not contend otherwise.

Such a credit appears reasonable in view of the fact that the jury's verdict reflected plaintiffs' total damages as a result of the conspiracy between Fox and General Cinema.

Damages will therefore be awarded in the sum of $136,799 ($48,933 trebled, or $146,799, less $10,000).

*Summary*

The Court will sign a revised judgment order to be submitted by plaintiffs on 7 days' notice to Fox, providing for damages in the amount of $136,799, for attorneys' fees in the amount of $72,850, for costs as taxed by the Clerk, and for interest on such amounts at the annual rate of 6% from the date of the judgment, and enjoining Fox from licensing for exhibition in any theater in Northern Westchester County any feature motion picture for which plaintiffs have not been given an equal opportunity to bid or negotiate, provided that plaintiffs at the time shall not be more than thirty days in arrears in the payment of royalties due from them to Fox.