588 F.2d 246
 Rose ZOLL, Appellee-Cross-Appellant,
v.
EASTERN ALLAMAKEE COMMUNITY SCHOOL DISTRICT, Board of
Directors of the Eastern Allamakee Community School
District, both Individually and as Board members, Lawrence
Protsman, Hugh Conway, James Mettille, Roy Renk, Duane
Fuhrman, Superintendent of the Eastern Allamakee Community
School District, as Superintendent and as an Individual,
Harold Pronga, Elementary Principal of Eastern Allamakee
Community School District as Elementary Principal and as an
Individual, Appellants- Cross-Appellees.
 Nos. 77-1982, 77-1946.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 13, 1978.
Decided Dec. 7, 1978.
 
 William F. Fanter (argued) and Michael H. Figenshaw, Des Moines, Iowa, filed brief, for Eastern Allamakee Community School Dist.
 James L. Sayre, Dreher, Wilson, Adams & Jensen, Des Moines, Iowa, Robert M. Weinberg, Michael H. Gottesman and David M. Silberman, Bredhoff, Gottesman, Cohen & Weinberg (argued) and David Rubin, Washington, D. C., filed brief for Zoll.
 Before BRIGHT, Circuit Judge, INGRAHAM, Senior Circuit Judge,* and STEPHENSON, Circuit Judge.
 INGRAHAM, Senior Circuit Judge.
 
 
 1
 This case for reinstatement and back pay arose out of the non-renewal of a public school teacher's contract. Mrs. Rose Zoll brought suit against the Eastern Allamakee Community School District, the school board, superintendent and elementary principal, alleging that she was denied renewal of her contract in retaliation for her exercise of First Amendment rights. A jury verdict was rendered and judgment entered in favor of Mrs. Zoll and against the superintendent and elementary principal. The jury did not find the school district or school board members liable. The district court ordered that the school board reinstate Mrs. Zoll and that the superintendent and elementary principal compensate her for back pay up to the date of trial and attorney's fees and expenses. The superintendent and elementary principal appeal from the denial of their motion for a directed verdict and the overruling of their objection to a jury instruction. Mrs. Zoll cross-appeals for an extension in the back pay period and an increase in the attorney's fee award. We affirm the entry of judgment of liability on the jury verdict and the reinstatement directive and remand to the district court for reconsideration of the post-trial back pay issue and the attorney's fee award.
 
 
 2
 Mrs. Zoll holds a Masters Degree in Elementary Administration and is certified by the State of Iowa as both a teacher and an administrator. Prior to the non-renewal of her contract, she had been employed as a first grade teacher in Allamakee County for twenty-nine years. The last fifteen years of her teaching career were with the Eastern Allamakee Community School District which was organized after she began teaching. She was promoted to elementary school principal in the Eastern Allamakee Community School District but resigned after two years to devote her full time to teaching.
 
 
 3
 In September 1973, Mr. Harold Pronga succeeded Mrs. Zoll as the elementary school principal. In June and July 1974, Mrs. Zoll wrote two letters to the editor of a local newspaper sharply criticizing Mr. Pronga, School Superintendent Duane Fuhrman, and school board members Lawrence Protsman, Hugh Conway, James Mettille and Roy Renk for a decline in administrative concern with academic excellence.[1]
 
 
 4
 In August 1974, on her second day at school following the summer vacation, Mrs. Zoll was summoned to Mr. Pronga's office to discuss the letters. Mr. Pronga had informed Superintendent Fuhrman of the planned meeting. At the outset of their discussion, Mr. Pronga read to Mrs. Zoll from his prepared notes: "I am very concerned and equally puzzled by your letters to the editor." Mr. Pronga accused Mrs. Zoll of misrepresenting facts and chastised her for failing to express her feelings through proper channels.
 
 
 5
 In December 1974, the school board followed the suggestion of the Iowa Department of Public Instruction in adopting a contingency plan for staff reduction in the event of a decline in enrollment. The plan included rules for determining the pool of teachers from which layoffs would be made. Selection from the pool would be by a 100-point system. A maximum of 40 points could be awarded for experience and training. The principal, superintendent and school board could award up to 20 points each, based on their subjective evaluations.
 
 
 6
 At the February 1975 school board meeting, the board was informed of a projected enrollment decline of first grade students for the 1975-76 school year which would warrant a staff reduction. The board treated as a pool from which a lay-off would be made the three first grade teachers: Mrs. Zoll, Mrs. Rebecca Okerlund and Mrs. Jane Meyer. The official decision of which teacher to terminate was postponed until the March board meeting.[2]
 
 
 7
 Out of the potential 100 points, Mrs. Zoll received 57,[3] Mrs. Okerlund 62 1/2, and Mrs. Meyer 72. Mrs. Zoll received the highest point totals on the objective evaluation of experience and training. Out of a possible 40 points, Mrs. Zoll received 40, Mrs. Okerlund 4 1/2 and Mrs. Meyer 16. Mrs. Zoll received the lowest point totals on the subjective evaluations by Mr. Pronga, Mr. Fuhrman and the school board. Out of a possible 60 points, Mrs. Zoll received 17, Mrs. Okerlund 58, and Mrs. Meyer 56.
 
 
 8
 On April 8, 1975, the school board notified Mrs. Zoll that her contract would not be renewed for the 1975-76 school year. A public hearing was convened by the school board at Mrs. Zoll's request on June 9, 1975, pursuant to Iowa Code § 279.13 (1975). At the conclusion of the hearing, the board voted four to one not to renew her contract.
 
 
 9
 On December 15, 1975, Mrs. Zoll filed suit against Mr. Pronga, Mr. Fuhrman, and the four board members who voted not to renew her contract, alleging that they had refused to renew her teaching contract in retaliation for her exercise of First Amendment rights in violation of 42 U.S.C. § 1983 (1970).[4]
 
 
 10
 The action proceeded to trial before a jury on August 8, 1977. The court denied defendants' motion for directed verdict made at the close of Mrs. Zoll's case and renewed at the close of all the evidence.
 
 
 11
 The court then instructed the jury on the elements of Mrs. Zoll's § 1983 claim:
 
 
 12
 The first amendment of the Constitution guarantees the right of free speech. The plaintiff in this case, like all persons living under the protection of the Constitution, had the legal right at all times not to be deprived of her free speech rights.
 
 
 13
 In order to sustain her claim against defendants, the plaintiff must prove by a preponderance of the evidence that:2. Defendants' decision not to rehire was in retaliation for plaintiff's exercise of her right of free speech.
 
 
 14
 The parties in this case agree that "letters to the editor" are protected speech under the first amendment.
 
 
 15
 It is plaintiff's burden to show that protected conduct was a "substantial" or "motivating" factor in the board's decision not to rehire her.
 
 
 16
 If you find that Mrs. Zoll has carried that burden, you must next determine whether the board would have made the same decision in the absence of the protected conduct.
 
 
 17
 The defendants objected to the instruction on the ground that the "right of free speech" was not adequately defined. They expressed concern that the jury might find for Mrs. Zoll although conclude that her discharge was due to her school board appearances[5] rather than her letters to the editor. The court overruled the objection.
 
 
 18
 The court further instructed the jury that if Mrs. Zoll was found to be entitled to damages, that she should be compensated for the loss of income up to the date of trial.
 
 
 19
 The jury returned a verdict against Mr. Pronga and Mr. Fuhrman and assessed the maximum damages permitted by the court's instruction.[6] On October 25, 1977, judgment was entered on the verdict. The court ordered the school board to offer Mrs. Zoll the first available teaching position for which she was qualified. Mrs. Zoll's motion to extend the back pay period to the date reinstatement is actually offered was denied. Pursuant to 42 U.S.C. § 1988 (Supp.1976), Mrs. Zoll's counsel requested $7,150 in fees, based on the total number of hours worked times his regular hourly billing rate.[7] The court awarded attorney's fees of $5000, "given the nature of this case and considering all relevant circumstances."
 
 
 20
 Notice of appeal was duly filed on November 22, 1977, and notice of cross-appeal on December 6, 1977. On appeal, the defendants argue that the evidence of retaliatory motive is insufficient to support the jury verdict and that the jury instruction on elements of the case is erroneous.[8] On cross-appeal, Mrs. Zoll argues that the back pay period should extend to the date of a reinstatement offer and that the attorney's fee award should be vacated and remanded for reconsideration.
 
 
 21
 In determining whether the evidence of a retaliatory motive is sufficient to support the jury verdict, we are
 
 
 22
 (1) to consider the evidence in the light most favorable to the plaintiffs as the parties prevailing with the jury; (2) to assume that all conflicts in the evidence were resolved by the jury in favor of the plaintiffs; (3) to assume as proved all facts which plaintiffs' evidence tends to prove; (and) (4) to give the plaintiffs the benefit of all favorable inferences which may reasonably be drawn from the facts proved.
 
 
 23
 Hanson v. Ford Motor Co., 278 F.2d 586, 597 (8th Cir. 1960). Circumstantial as well as direct evidence of intent is relevant to a determination of sufficiency. Williams v. Anderson, 562 F.2d 1081, 1086 (8th Cir. 1977). A verdict may be directed or a jury verdict overturned "only where the evidence points All one way and is susceptible of No reasonable inferences sustaining the position of the nonmoving party." Giordano v. Lee, 434 F.2d 1227, 1231 (8th Cir. 1970) (emphasis in original).
 
 
 24
 There is sufficient evidence of a retaliatory motive for the non-renewal of Mrs. Zoll's contract to support the jury verdict. Mrs. Zoll's letters to the editor criticizing the school administration were published in the summer of 1974. On the second day of the 1974-75 school year, Mr. Pronga called Mrs. Zoll to his office to express his displeasure with the letters. Mr. Fuhrman had foreknowledge of the meeting. There was testimony that the decision to terminate Mrs. Zoll was made before the statistical evaluation. Mrs. Zoll's expert witness testified to inconsistencies between the points assigned Mrs. Zoll and the notes and testimony of Mr. Pronga and Mr. Fuhrman.
 
 
 25
 Under the staff reduction policy which the board had adopted in December 1974, teachers laid off pursuant to the policy were granted certain "recall rights" for a three year period: "Any staff member laid off due to reduction of staff policy may be recalled if a vacancy exists within three years." Three vacancies arose during the year following Mrs. Zoll's termination. The vacancies were at the first grade, sixth grade and seventh-eighth grade levels. Mrs. Zoll applied for but was not offered any of these positions.[9] Instead, two new teachers were hired and one teacher was transferred to fill the vacancies. The jury could reasonably have believed that the subjective rating of Mrs. Zoll by Mr. Pronga and Mr. Fuhrman was a pretext for discharging her for exercising her First Amendment rights. See Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).
 
 
 26
 The defendants' second ground of appeal is that the jury instruction on elements of the case permitted the jury to consider as constitutionally protected speech conduct other than Mrs. Zoll's letters to the editor. We concede that the jury instruction could have been more precise in defining the "right of free speech." However, the conduct which defendants complain may have been considered by the jury, Mrs. Zoll's school board appearances on behalf of the teachers' association, was constitutionally protected. Greminger v. Seaborne, 584 F.2d 275, 277 (8th Cir. 1978).[10] Consequently, no reversible error was committed by the district court in charging the jury on elements of the case.
 
 
 27
 On the cross-appeal, Mrs. Zoll argues that the back pay period should extend beyond trial to the date on which a reinstatement offer is made. Although Mrs. Zoll's request for such additional relief, filed October 13, 1977, is not in the Appendix before us, we infer from the district court's order denying the relief, issued October 21, 1977, that the request sought future back pay, that is compensation for lost salary from the commencement of trial until the date reinstatement is offered, from the Eastern Allamakee Community School District and not from Mr. Pronga and Mr. Fuhrman. Mrs. Zoll characterizes the requested relief as incidental to the reinstatement directive against the school board which is not questioned on this appeal.
 
 
 28
 The general rule is that the back pay period runs until the reinstatement offer date: "when vacancies occur a school employee who has been wrongfully terminated becomes entitled to the first opportunity to be reemployed, and the damages shall run until the effective date reemployment is offered." United States v. Cotton Plant School District No. 1, 479 F.2d 671, 674 (8th Cir. 1973). However, we are not faced with application of this rule to parties found liable, Mr. Pronga and Mr. Fuhrman, but to a party not found liable, the Eastern Allamakee Community School District.
 
 
 29
 The liability of the school district is governed in part by Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which was decided after the parties submitted briefs to this court. Monell held that local governing bodies cannot be held liable under 42 U.S.C. § 1983 (1970) on a respondeat superior theory but may be held liable where official action "is responsible for a deprivation of rights protected by the Constitution." 436 U.S. at 690, 98 S.Ct. at 2036. Although Monell foreclosed an absolute immunity from § 1983 suits of local governing bodies, the door was left open for a qualified immunity. While leaving undisturbed the reinstatement directive and back pay award up to trial, we remand the issue of post-trial back pay against the school district to the district court for reconsideration in light of Monell.
 
 
 30
 Mrs. Zoll also challenges as inadequate the amount of the attorney's fee award under 42 U.S.C. § 1988 (Supp.1976). The guidelines for attorney's fees set forth by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), have been expressly approved by this court. Allen v. Amalgamated Transit Union, Local 788, 554 F.2d 876, 884 (8th Cir.), Cert. denied, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977).[11] Under the Johnson standards, the minimum award should generally be not less than the number of hours claimed times the attorney's regular hourly rate. Greminger v. Seaborne, 584 F.2d at 279 n. 5. Although there was no dispute over the number of hours claimed or the regular hourly rate of Mrs. Zoll's counsel, the district court awarded fees below this minimum level.[12] Accordingly, we vacate the award of attorney's fees and direct that, on remand, the district court determine an appropriate fee award with an explanation utilizing the Johnson criteria. Additionally, we direct Mrs. Zoll's counsel to file an affidavit in this court in order that an allowance of reasonable attorney's fees and expenses can be made for this appeal. See Allen v. Amalgamated Transit Union, Local 788, 554 F.2d at 884.
 
 
 31
 There is sufficient evidence of an illicit motive for the non-renewal of Mrs. Zoll's contract to support the jury verdict of liability. No reversible error was committed by the district court in charging the jury on the elements of Mrs. Zoll's case. However, the district court failed to comply with the Johnson guidelines for attorney's fee awards and decided the back pay claim against the school district without the benefit of Monell. Accordingly, we affirm the entry of judgment of liability on the jury verdict, vacate the attorney's fee award and remand to the district court for reconsideration of the post-trial back pay issue and the attorney's fee award and for further proceedings consistent with this opinion.
 
 
 32
 AFFIRMED IN PART, VACATED AND REMANDED IN PART.
 
 
 
 *
 The Honorable Joe Ingraham, United States Senior Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 Mrs. Zoll complained that athletics were stressed over academics in the high school and that the quality of the elementary school was also in jeopardy. Her fears were based in part upon Mr. Pronga's refusal to authorize her requisition for work books and his suggestion that Mrs. Zoll teach her students to play "Fish" and "Concentration."
 
 
 [2]
 Mrs. Zoll was advised by a colleague of the school board president that the decision to terminate her was actually made at the closed executive session of the February board meeting
 
 
 [3]
 Mrs. Zoll was erroneously awarded 17 points for experience, although she was entitled to 20 points under the objective scale. Thus, she was actually awarded 54 points, although entitled to 57 points
 
 
 [4]
 Mrs. Zoll's allegations of a conspiracy under 42 U.S.C. § 1985(3) (1970), a denial of due process and state law violations were dismissed prior to trial on defendants' motion
 
 
 [5]
 Mrs. Zoll was active in the local education association of Eastern Allamakee County, having served on various committees and as president of the association. On behalf of the association, Mrs. Zoll appeared before the school board frequently
 
 
 [6]
 The school board members were found to be not personally liable
 
 
 [7]
 The affidavit submitted by Mrs. Zoll's counsel, which was uncontested, showed that counsel had worked on the case 247.8 hours. His regular hourly rate was $25 during the first year he represented Mrs. Zoll and $30 during the second year. Counsel claimed expenses of $2,513.49, all of which were awarded
 
 
 [8]
 A third ground for appeal concerning the jury instruction on circumstantial evidence was withdrawn after Mrs. Zoll's responsive brief was filed
 
 
 [9]
 Mrs. Zoll's state certification qualified her to teach up to the ninth grade
 
 
 [10]
 See also Gieringer v. Center School Dist. No. 58, 477 F.2d 1164, 1167 (8th Cir.), Cert. denied, 414 U.S. 832, 94 S.Ct. 165, 38 L.Ed.2d 66 (1973); City of Madison Joint School Dist. No. 8 v. Wisconsin Employment Relations Commission, 429 U.S. 167, 175, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976)
 
 
 [11]
 In assessing attorney's fees, the district court should consider twelve factors: (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases
 
 
 [12]
 The award of the district court was equivalent to a fee of approximately $20 an hour. See note 7, Supra