**Stanley McDONALD, Norman R. Hagfors and Clayton Jensen, Plaintiffs,**

**v.**

**JOHNSON & JOHNSON, Defendant.**

**No. Civ. 4–79–189.**

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 24, 1982.

Gray, Plant, Mooty, Mooty & Bennett by Daniel Shulman and John Q. McShane, Minneapolis, Minn., and Alioto & Alioto by Joseph M. Alioto, San Francisco, Cal., for plaintiffs.

Maslon, Edelman, Borman, Brand & McNulty by Charles Quaintance, Jr., Minneapolis, Minn., Patterson, Belknap, Webb & Tyler by David F. Dobbins and Theodore B. Van Italie, Jr., New York City, James E. Farrell, Jr., Johnson & Johnson, New Brunswick, N.J., for defendant.

## ORDER

MILES W. LORD, Chief Judge.

## I. INTRODUCTION

Before this Court is plaintiffs' application for cost of suit, including a reasonable at-

torney's fee, brought pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15.

The application derives from an action which was commenced on May 2, 1979, by Norman R. Hagfors, Clayton Jensen and Stanley McDonald, hereinafter plaintiffs, against Johnson & Johnson, hereinafter defendant, a health care corporation headquartered in New Brunswick, New Jersey. The complaint alleged breach of contract, fraud, and conduct designed to foreclose competition in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and Section 7 of the Clayton Act, 15 U.S.C. § 18. This Court's jurisdiction was premised on §§ 1332 and 1337 of 28 U.S.C.

Following a five and one-half month trial, the jury returned a verdict finding, *inter alia,* that the defendant had violated Sections 1 and 2 of the Sherman Act and awarding the plaintiffs single damages of $56,800,000.00 for each violation. On July 17, 1981, judgment was entered to the effect, *inter alia,* that the plaintiffs recover the sum of $170,400,000.00 "said sum being treble the amount of the verdict of the jury pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, plus a reasonable attorney's fee and costs to be determined subsequently by the Court and entered *nunc pro tunc* . . . ."

In support of the application, the plaintiffs have submitted the affidavits of Daniel R. Shulman and Joseph M. Alioto, principal counsel for the plaintiffs, as well as a number of exhibits. On September 11, 1981, a hearing was held at which time both parties presented arguments. The matter was then taken under advisement.

## II. THE FEE REQUEST

The full request before this Court is $5,088,681.63. The total amount consists of $5,000,000.00 for attorneys' fees and an additional $88,681.63 for costs in connection with the prosecution of this litigation. The total request is delineated in the following table:

### ATTORNEYS' FEES

| | | |
|---|---|---|
| A. | Total hours times current [1] hourly rates | $ 772,848.00 |
| B. | Increase of 1.00 for risk | 772,848.00 |
| C. | Increase of 1.00 for quality | 772,848.00 |
| | Total Minimum Fee Requested | $2,318,544.00 |
| D. | Adjustment based on size of damage award | 2,681,456.00 |
| | TOTAL FEE REQUESTED | $5,000,000.00 |

### EXPENSES

| | | |
|---|---|---|
| | | 88,681.63 |
| | TOTAL REQUESTED FEES AND EXPENSES | $5,088,681.63 |

## III. DISCUSSION

### A. Fee Computation in the Various Circuits.

Section 4 of the Clayton Act, 15 U.S.C. § 15 (1964), provides:

Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages by him sustained, *and the cost of suit, including a reasonable attorneys fee.* (emphasis added)

The purpose of the attorneys' fee provision is to ensure the fact that a plaintiff who successfully prosecutes an antitrust action does not have its treble damage recovery excessively diminished by the payment of fees to its attorneys. *International Travel Arrangers, Inc. v. Western Airlines, Inc.,* 623 F.2d 1255, 1274 (8th Cir. 1980). *Perkins v. Standard Oil Co.,* 474 F.2d 549, 553 (9th Cir.), *cert. denied* 412 U.S. 940, 93 S.Ct. 2778, 37 L.Ed.2d 400 (1973); *Farmington Dowell Products Co. v. Forster Manufacturing Co.,* 421 F.2d 61, 88 (1st Cir. 1970). In keeping with the intent of the statute, those fees awarded accrue to the plaintiff and not to its attorney. *International*

---

1. The total lodestar amount can be further delineated as follows:

| | |
|---|---|
| D. Shulman: 2,551.50 hours x $102.00/hour | $260,253.00 |
| J. McShane: 1,056.00 hours x $90.00/hour | 95,040.00 |
| M. Sullivan: 167.75 hours x $144.00/hour | 24,156.00 |

Other attorneys at the Gray Plant firm:

| | |
|---|---|
| 262.05 hours x approximately $76.29/hour (averaged for seven attorneys) | 20,759.40 |
| Paraprofessional time: 3,639.55 hours x approximately $25.70/hour (averaged for ten paraprofessionals) | 92,139.60 |
| J. Alioto: 1,122 hours x $250.00/hour | 280,500.00 |

*Travel Arrangers, Inc. v. Western Airlines, Inc., supra* 623 F.2d at 1274.

In order for this Court to be faithful to the congressional objective of awarding a reasonable attorney's fee, it is necessary to examine the fee award standards in the various circuits with some degree of particularity. Historically, in determining the amount of the attorney's fees award, the courts have placed particular emphasis on the size of the successful plaintiff's recovery. In some cases, a straight percentage approach has been applied. *Union Carbide Corp. v. Nisley,* 300 F.2d 561 (10th Cir. 1961) (15% of trebled amount). However, because one of the legislative purposes underlying Section 4 of the Clayton Act is to encourage private vindication and enforcement of the antitrust laws, there are those who fear that a case involving important precedent but relatively low monetary recovery might offer insufficient incentive to the bar to prosecute if a straight percentage approach is used. *See Phillips v. Crown Central Petroleum Corp.,* 426 F.Supp. 1156, 1170 (D. Md. 1977), vacated without prejudice and remanded on other grounds 556 F.2d 702 (4th Cir. 1977). In response to these fears, a new, generally accepted approach to computing attorney fee awards under 15 U.S.C. § 15, commonly known as the lodestar method, was developed. It was first set forth by the Third Circuit in *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3rd Cir. 1973). Basically, this method consists of three steps: (1) multiplying the number of hours spent times the attorney's regular billing rate which results in a lodestar amount, (2) adjusting that lodestar amount for risk or contingency factors, and (3) adjusting that amount for the quality of work performed. This method was first utilized in an antitrust suit and remains popular for that type of litigation. *See Merola v. Atlantic Richfield Co.,* 515 F.2d 165 (3rd Cir. 1975); *Prandini v. National Tea Co.,* 557 F.2d 1015 (3rd Cir. 1977); *Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208 (3rd Cir. 1978); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (3rd Cir. 1974); *In Re Ampicillin Antitrust Litigation,* 81 F.R.D. 395 (D.D.C. 1978). Even though *Lindy* involved a class action in an antitrust case, the Eighth Circuit recently approved the application of the *Lindy* principles to an award of attorney's fees pursuant to 15 U.S.C. § 15. *International Travel Arrangers* at 1274.

A second approach to fee computation was announced by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 715 (5th Cir. 1974). Although it has been more fully developed by the Circuit Courts in civil rights litigation, it has also been cited favorably by courts in assessing attorney's fees under Section 4 of the Clayton Act. *See e.g., Grunin v. International House of Pancakes,* 513 F.2d 114, 127 (8th Cir. 1975). Essentially, the *Johnson* approach consists of a consideration of twelve factors: (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

While the second approach found support initially, a number of courts eventually criticized the use of these factors as the sole method of determining attorney's fees because there was little direction given in relation to their application. *See e.g., City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir. 1974); *Northcross v. Board of Education of Memphis,* 611 F.2d 624, 642 (6th Cir. 1979), *cert. denied* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). Even the Fifth Circuit has moved away from its deference to the unguided use of the *Johnson* factors and has formally adopted an approach similar to the lodestar method. *See Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575 (5th Cir. 1980).

328

At first the Eighth Circuit embraced the *Johnson* method of fee computation. *Doe v. Poelker,* 515 F.2d 541, 548 (8th Cir. 1975), *rev'd on other grounds* 428 U.S. 909, 96 S.Ct. 3220, 49 L.Ed.2d 1216 (1976); *Allen v. Amalgamated Transit Union Local 788,* 554 F.2d 876, 884 (8th Cir. 1977). Apparently, because the *Johnson* method often resulted in awards which were less than the amount resulting from the number of hours claimed times the attorney's regular hourly rate, the Court moved closer to adopting the lodestar method. *Zoll v. Eastern Allamakee Community School District,* 588 F.2d 246, 252 (8th Cir. 1978). *Zoll,* therefore, appears to require the District Court to employ the *Johnson* factors only to raise an award over the lodestar amount. *See also Cleverly v. Western Electric Co.,* 594 F.2d 638, 642 (8th Cir. 1979). Under unusual circumstances, however, a court may use the *Johnson* standards to reduce the fee requested by counsel. *Williams v. Trans World Airlines, Inc.,* 660 F.2d 1267, 1274–76 (8th Cir. 1981) (extremely low quality representation); *Robinson v. Moreland,* 655 F.2d 887, 891–92 (8th Cir. 1981) (plaintiff prevailed over only one of the original defendants); *Ladies Center, Nebraska, Inc. v. Thone,* 645 F.2d 645, 647 (8th Cir. 1981) (inefficient use of time). The Eighth Circuit, therefore, has adopted a hybrid ("lodestar-Johnson") analysis for attorneys' fees.

This hybrid analysis is characterized by three recent cases. In *Jorstad v. IDS Realty Trust,* 643 F.2d 1305 (8th Cir. 1981), the Court stated:

Since the "starting point in determining attorney's fees is to arrive at a 'lodestar' figure by multiplying an hourly rate by the number of hours worked," *International Travel Arrangers, Inc. v. Western Airlines, Inc., supra,* 623 F.2d at 1274, it is particularly important that those rates which are applied be, in fact, reasonable hourly rates. In *Grunin v. International House of Pancakes, supra,* 513 F.2d at 127, this court adopted the standards to be considered in calculating attorneys' fees which were previously set forth by the Third Circuit in *Lindy Bros. Builders, Inc. v. American Radiator & Standard*

*Sanitary Corp.,* 487 F.2d 161, 167–78 (3d Cir. 1973) (*Lindy I*), and reiterated in *Merola v. Atlantic Richfield Co., supra,* [3d Cir.] 493 F.2d [292] at 297:

(a) the number of hours spent in various legal activities by the individual attorneys,

(b) the *reasonable* hourly rate for the *individual attorneys,*

(c) the contingent nature of success, and

(d) the quality of the attorneys' work.

. . . These standards were recently reaffirmed in this circuit in *International Travel Arrangers, Inc. v. Western Airlines, Inc., supra* 623 F.2d at 1274.

*Id.* at 1312–13.

In *Ladies Center, Nebraska, Inc. v. Thone,* 645 F.2d 645 (8th Cir. 1981), the Court of Appeals noted:

This court has expressly adopted the guidelines for attorney fees set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974). *See Zoll v. Eastern Allamakee Community School District,* 588 F.2d 246, 252 (8th Cir. 1978); *Allen v. Amalgamated Transit Union, Local 788,* 554 F.2d 876, 884 (8th Cir.), *cert. denied* 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977).

*Id.* at 647.

The lodestar analysis of *Jorstad* and the *Johnson* analysis of *Ladies Center* coalesce in *Robinson v. Moreland,* 655 F.2d 887 (8th Cir. 1981), where the Court remarks:

The trial court correctly stated the governing legal principle: that the court should ordinarily award the number of hours claimed, multiplied by the attorney's regular hourly rate. The trial court, however, may award a lesser amount if it finds a lesser award appropriate under the factors listed in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974), provided the court states its reasons for so doing. *See Ladies Center, Nebraska, Inc. v. Thone,* 645 F.2d 645 at 647 (8th Cir. 1981).

*Id.* at 891.

Of course, the *Johnson* factors can still be used to raise an award over the lodestar

amount. *See Cleverly v. Western Electric Co.*, 594 F.2d 638 (8th Cir. 1979); *Zoll v. Eastern Allamakee Community School District,* 588 F.2d 246 (8th Cir. 1978).

B. Analysis.

Since the determination of reasonable attorneys' fees must start with the calculation of a lodestar figure by multiplying the attorneys' hourly rates by the number of hours expended, it is with that process that the Court begins its analysis. *Jorstad v. IDS Realty Trust,* 643 F.2d 1305, 1312 (8th Cir. 1981); *International Travel Arrangers, Inc. v. Western Airlines, Inc.,* 623 F.2d 1255, 1274 (8th Cir. 1980); *cert. denied* 449 U.S. 1063, 101 S.Ct. 787, 66 L.Ed.2d 605 (1980). The plaintiffs' attorneys have submitted a total of 8,798.85 hours expended for time devoted to the case on its merits. Of this total, 7,676.85 are claimed by the Gray Plant firm at hourly rates ranging from $20.00 per hour for paralegal assistance to $144.00 per hour for senior attorney time. For the Alioto firm, 1,122 hours are claimed at an hourly rate of $250.00. Therefore, the calculations yield a lodestar figure of $492,-349.00 for the Gray Plant firm and a lodestar figure of $280,500.00 for the Alioto firm.

These lodestar figures represent base fee amounts upon which a determination of the reasonableness of the number of hours expended and the hourly rates is centered. *See, e.g., Ladies Center, Nebraska, Inc. v. Thone,* 645 F.2d 645, 647 (8th Cir. 1981); *Jorstad v. IDS Realty Trust,* 643 F.2d 1305, 1313 (8th Cir. 1981).

██ The defendant in the instant case challenges the reasonableness of the hours expended on a host of grounds. Initially, the defendant points to the plaintiffs' failure to segregate the time actually spent in preparing for and trying the antitrust claims from the time spent in trying the breach of contract and fraud claims and asserts that the lack of apportionment renders the fee application invalid. However, each of the cases cited as authority for the defendant's position refers specifically to the respective courts' rejections of fee requests where only equitable relief was sought and/or obtained. The cited authorities correctly establish the fact that the allowance of attorney's fees under 15 U.S.C. § 15 is incidental to the statutory right to damages. *Trans World Airlines, Inc. v. Hughes,* 312 F.Supp. 478, 482 (S.D.N.Y. 1970), *aff'd* 449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). *Decorative Stone Co. v. Bldg. Trades Council,* 23 F.2d 426 (2d Cir.), *cert. denied* 277 U.S. 594, 48 S.Ct. 530, 72 L.Ed. 1005 (1928); *FLM Collision Parts Inc. v. Ford Motor Co.,* 411 F.Supp. 627 (S.D.N.Y.) *rev'd on other grounds,* 543 F.2d 1019 (2d Cir. 1976). Here, no injunctive relief was ever sought by the plaintiffs; damages, however, were requested and recovered. In addition, both the contract claim and the fraud claim were inextricably bound up with the antitrust claims and any attempt to separate the hours spent in proving each claim, individually, would be nothing short of an exercise in futility. Consequently, this Court will not invalidate the fee request for the reason suggested by the defendant.

The defendant next challenges what it characterizes as plaintiffs' counsel Joseph Alioto's willful failure to maintain any time records. The defendant in referring to Mr. Alioto's affidavit in which the affiant estimates he spent a total of 1,122 hours on the case, claims that the lack of detailed records "removes any basis for including his claimed hours in the lodestar amount." (Defendant's Memorandum Opposing Plaintiffs' Application for Cost of Suit and Attorneys' Fees, pp. 2 and 3)

Although the defendant raises an important issue and substantiates its position with persuasive authority, this Court cannot concur with its conclusion. Courts generally agree that attorneys should submit detailed affidavits itemizing and explaining their fee petitions "in order to insure that all necessary data is before the court . . . ." *Grunin v. International House of Pancakes,* 513 F.2d 114, 127 (8th Cir. 1975). However, the Courts have permitted the submission of reconstructed hours in certain circum-

stances. The Court of Appeals for the Eighth Circuit in *International Travel Arrangers, Inc.* articulated its policy regarding the submission of less-than-detailed records as follows:

> While we do not disallow all reconstructed hours, we believe the court in *Kane v. Martin Paint Stores, Inc.,* 439 F.Supp. 1054 (S.D.N.Y. 1977), aff'd, 578 F.2d 1368 (2d Cir. 1978), properly held that uncertainties should be resolved against the plaintiff, if arising because of imprecise recordkeeping *without adequate justification.*

*International Travel Arrangers, etc.,* 623 F.2d at 1275 (emphasis added).

■ It is the opinion of this Court that in keeping with the standards established by the Eighth Circuit, Mr. Alioto has, in his affidavit, provided adequate justification for submitting his time information in the manner in which it was submitted. Time sheets are not kept in the ordinary course of business by Mr. Alioto or his associates. With the exception of one case in which he was initially retained on an hourly basis, Mr. Alioto's representation of private plaintiffs in antitrust suits has always been on a contingency basis.

■■ In order to determine the reasonableness of a requested attorney's fee which is statutorily created, it is not necessary for the Court to rely solely on computer printouts of total time expended. When properly executed, the practice of law is an art and more suitably evaluated by criteria more subjective in nature than mechanical grids which dispassionately spew forth numbers. As the *Johnson* Court stated, the presiding judge "should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities." *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717 (5th Cir. 1974). It is not inconceivable that a total of 1,122 hours would be expended in the course of the preparation for and trial of a five and one-half month antitrust suit. It has been this Court's experience that a good rule of thumb to apply in litigation is that three days of prepara-

tion are necessary for every one day in court. In the instant case, 81 days were spent in trial at an average of five hours per day. Therefore, for a total of 405 hours in trial, it is reasonable to have spent 1,215 hours in preparation. It is the opinion of this Court that the preparation alone, necessary to enable most attorneys to prosecute an action of the instant sort, would have required the expenditure of at least as many hours as Mr. Alioto spent on the entire case. Therefore, this Court, without hesitation, finds the estimated hours submitted by Mr. Alioto to be reasonable under the circumstances.

■ The defendant also challenges the plaintiffs' inclusion of paraprofessional services in their lodestar calculation and suggests these services are more properly includable in expenses. This Court agrees. The Second Circuit in *City of Detroit* pointed out that the fee petitioner in that action must be reimbursed for the wages of his paraprofessional assistants "even though their time cannot be considered as input in the fee award determination." *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 473 (2d Cir. 1974). The number of hours correctly included in the lodestar computation is restricted solely to those hours reasonably expended by the attorneys who successfully prosecuted the case. On the other hand, the hours attributed to paraprofessional assistants should be allocated to expenses. Consequently, the total lodestar amount will be reduced accordingly.

■ Similarly, the defendant contends that the plaintiffs are improperly attempting to recover attorney's fees for Michael Sullivan when, in reality, much of Mr. Sullivan's time was spent, according to the Gray Plant time chart, on matters more properly recovered as costs of litigation. The time chart submitted by the plaintiffs as part of their memorandum in support of the fee petition indicates that Mr. Sullivan expended a total of 167.75 hours on the litigation for a sum of $24,156.00. This Court, in an attempt to determine the precise nature of Mr. Sullivan's hourly efforts, independently reviewed the summary of time proffered by

Gray Plant and finds some merit in the defendant's challenge. It is the opinion of this Court that items such as "standing by and testifying at trial," "reviewing testimony in preparation of being witness," and "deposition of Michael P. Sullivan in litigation suit," should more correctly be treated as expenses for an expert witness and not be figured into the lodestar calculation. As a consequence, a total of 31.50 hours of Mr. Sullivan's time will be excluded from the base fee computation.

In questioning what it regards as the unjustified inclusion of over a thousand hours for John Q. McShane, the defendant seems to have created a double standard—one for plaintiffs' attorneys and another for defendant's attorneys. According to the defendant's memorandum in opposition to plaintiffs' application, "there can be no justification for the presence of three experienced trial attorneys throughout the trial in this case." (Defendant's Memo at p. 7.) What the defendant fails to mention, however, is the fact that it was solidly represented on most occasions by two New York counsel, one in-house attorney and local counsel in an action it regarded as having no settlement value before the trial began. Based upon this Court's knowledge of the complexity of the issues involved and the expertise required to represent a client adequately in litigation of the instant sort and also based upon a careful examination of the time charts submitted, it appears that the plaintiffs' counsel utilized their time reasonably and properly. Therefore, no reduction in the lodestar will be made for Mr. McShane's time.

Based on the foregoing discussion, it is the opinion of this Court that the correct number of hours to be included in the lodestar computation for the plaintiffs' attorneys is as follows:

| | |
|---|---|
| Total hours for the Gray Plant firm: | 7,676.85 |
| Total hours for the Alioto firm: | 1,122.00 |
| Less: inappropriate time charges | 3,671.05 |
| (3,639.55 paraprofessional time + 31.50 hours for Mr. Sullivan's witness time) | |
| TOTAL LODESTAR HOURS | 5,127.80 |

The second element of the lodestar calculation upon which the Court next focuses its inquiry is the reasonable hourly rate. The Court of Appeals for the Eighth Circuit in *Jorstad* defined "reasonable hourly rate" as the "hourly amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation." *Jorstad* at 1313, quoting from *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 471 (2d Cir. 1974).

In an attempt to establish the reasonableness of their respective charges, the plaintiffs' counsel have submitted numerous affidavits from law firms in the area which state, generally, the range of hourly rates of partners and associates in the firms. In addition, this Court recently received in evidence an elaborate Table of Fees based on affidavits from attorneys in the area, at a hearing on attorneys' fees in a discrimination case. To augment its references in arriving at an evaluation of the reasonableness of the hourly rates charged in the instant case, this Court will take judicial notice of the Table prepared by the Minneapolis firm of Sprenger, Olson & Shutes.

The summary submitted to this Court by the Sprenger firm of attorneys' hourly rates from 18 litigation entities reflects the following actual rates [2] charged by attorneys in the Twin Cities:

2. The Sprenger firm explains its use of "actual rates" in the following way:

"Actual rates/senior attorney" is used as in *Jorstad v. IDS Realty Trust,* (CCA–8, 1981), 643 F.2d 1305, to indicate the actual rate charged for one or more of the senior attorneys in the particular firm. The rates are after the application of the firm's mode of markup over its costs, recovery or minimum internal rates. *Jorstad* found the high end rates actually charged for partners admitted 12 to 24 years to be reasonable for all partners admitted 9 to 35 years.

. . . .

"Actual rates/associates" is used as in *Jorstad, ibid.* to indicate the actual rate charged for one or more of the associates in the particular firm. *Jorstad* found the average rate charged for the senior associate in the case, who was admitted 3 years, to be reasonable for all associates admitted less than 1 to 3 years.

| | Range | Median |
|---|---|---|
| Senior attorneys: (hourly rates) | $130–$300 [3] | $150 [4] |

| | Range | Average |
|---|---|---|
| Associates: (hourly rates) | $ 60–$100 | $85.40 |

Of the rates for partners requested by the Gray Plant firm, none is as high as the median rate for Twin Cities attorneys. In addition, Mr. Sullivan's normal hourly rate of $144.00 is the only one to fall within the range for senior attorneys. The charges for the Gray Plant associates, however, all fall within the range derived from the affidavits; yet only one, the $84.00 hourly rate for Susan Lentz, comes close to the average for associates in the Twin Cities. The Court finds the rates for both associates and senior attorneys charged in the instant case by the Gray Plant firm to be extremely reasonable and on the low side of the actual rates charged by the attorneys in the area.

The defendant, while not challenging the Gray Plant hourly request, vigorously protests the $250.00 hourly rate submitted by Mr. Alioto. The defendant characterizes Mr. Alioto's fee as "an hourly-rate premium" and insists the plaintiffs are not entitled to claim this amount "absent a showing that the Minnesota bar lacked qualified trial attorneys." (Defendant's Memorandum, p. 4). Although Minnesota is generously endowed with qualified and highly competent trial attorneys, Mr. Alioto's experience and unusual success in the antitrust area make him somewhat unique in the whole of the United States. By his own testimony, Mr. Alioto "has tried as many if not more antitrust cases than any other attorney in the United States and that he has had the opportunity to represent as many if not more successful antitrust plaintiffs at trial as any other attorney in the United States . . . ." Further, "until a verdict rendered . . . in New York in March, 1978, he had the opportunity to represent the plaintiffs who were awarded the largest antitrust verdict since the passage of the Antitrust Act in 1890." (Affidavit of Joseph M. Alioto, p. 2.)

In spite of Mr. Alioto's singular position, however, two of the most experienced antitrust attorneys in Minnesota submitted affidavits attesting to the fact that their hourly rates are comparable to Mr. Alioto's. One billed at the rate of $250.00 per hour, precisely the amount requested by Mr. Alioto, and the other billed between $200–$400.00 an hour, depending on the circumstances of the case.

It is the opinion of this Court that the requested rate of $250.00 per hour for Mr. Alioto is richly deserved and very reasonable in light of the "hourly amount to which attorneys of like skill in the area would typically be entitled." *Jorstad* at 1313.

In sum, the total lodestar figure requested by plaintiffs is $772,848.00, consisting of $492,348.00 for the Gray Plant firm and $280,500.00 for the Alioto firm. For the reasons stated above, the lodestar figure is reduced and the adjustments are reflected in the following table:

For the Gray Plant firm:

| PERSON | POSITION | TOTAL HOURS SPENT | HOURLY RATE | TOTAL AMOUNT |
|---|---|---|---|---|
| D. R. Shulman | Attorney (Partner) | 2,551.50 | 102.00 | $260,253.00 |
| J. Q. McShane | Attorney (Partner) | 1,056.00 | 90.00 | 95,040.00 |

**3.** This rate represents the average of $200–400, a range submitted by one affiant.

**4.** This Court elected to use the median here rather than the average because of the skewed distribution of the hourly rates.

| PERSON | POSITION | TOTAL HOURS SPENT | HOURLY RATE | TOTAL AMOUNT |
|---|---|---|---|---|
| M. P. Sullivan | Attorney (Partner) | 136.25 | 144.00 | 19,620.00 |
| T. S. Darling | Attorney (Associate) | 170.05 | 78.00 | 13,263.90 |
| S. L. Lentz | Attorney (Associate) | 52.50 | 84.00 | 4,410.00 |
| A. C. Selden | Attorney (Partner) | 6.00 | 102.00 | 612.00 |
| D. J. McFarland | Attorney (Associate) | 2.25 | 6.00 | 135.00 |
| T. J. Patin | Attorney (Associate) | 16.25 | 78.00 | 1,267.50 |
| H. B. Linehan | Attorney (Associate) | 14.25 | 72.00 | 1,026.00 |
| J. L. Krenn | Attorney (Associate) | .75 | 60.00 | 45.00 |

TOTAL GRAY PLANT LODESTAR FIGURE: $395,672.40

For the Alioto firm:

| PERSON | POSITION | TOTAL HOURS SPENT | HOURLY RATE | TOTAL AMOUNT |
|---|---|---|---|---|
| J. M. Alioto | Attorney (Partner) | 1,122.00 | 250.00 | $280,500.00 |

TOTAL ALIOTO LODESTAR FIGURE: $280,500.00

TOTAL ADJUSTED LODESTAR FIGURE: $676,172.40

It is at this point that the Court proceeds to a consideration of the contingent nature of success (risk) and quality factors present in the case. The plaintiffs have requested a multiple of 1.0 for risk and 1.0 for quality, so that in effect they are requesting three times the lodestar figure for the minimum fee. The Court of Appeals for the Eighth Circuit has joined other circuits in recognizing that the party requesting such an increase bears a heavy burden in proving an entitlement to that increase. *Jorstad v. IDS Realty Trust,* 643 F.2d 1305, 1314 (8th Cir. 1981); *International Travel Arrangers, Inc. v. Western Airlines, Inc.,* 623 F.2d 1255, 1276 (8th Cir. 1980).

Under the broad heading of "contingent nature of success" this Court must examine the essence of the burden undertaken by plaintiffs' counsel, to wit, the likelihood of success viewed at the time the suit was filed. *Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 117 (3rd Cir. 1976). The following factors must be included in the analysis:

1) the complexity and/or novelty of the legal issues involved;

2) the difficulty of proving the claims;

3) the number of hours of work expended without the guarantee of remuneration;

4) the amount of out-of-pocket expenses advanced; and

334

5) the delay in receipt of payment for services rendered.

*Lindy, supra* at 117.

 At the time the complaint was filed in the instant case, the chances of plaintiffs' prevailing on the merits were difficult, at best. The defendant was vehement in its insistence that the antitrust claims would be vigorously defended and that in its opinion the suit had no settlement value whatsoever. The counsel for plaintiffs were embarking on a new venture in the sense that none had any background in either the pain control industry or the medical electronics field. In addition, in spite of the general reluctance within the circuit to grant summary judgment motions, this Court, on the basis of the vigorous defense mounted by the defendant almost decided to grant the defendant's motion and then changed its mind at the last minute. To add to the uncertainty, even if the case went to trial and the plaintiffs prevailed, the plaintiffs would still have to weather the defendant's avowed position of intending to pursue every possible post-trial motion and appeal. The defendant was at the time of filing, and still is today, a giant in the health care field and able to draw upon tremendous resources to defend itself against the claims of the plaintiffs. The plaintiffs, by contrast, were three individual businessmen with limited resources and an incredible story to tell.

The complexity of the legal issues and the problems with proof compounded the difficulty for the plaintiffs. In proving their claims, the plaintiffs were faced with the task of orchestrating their prosecution so that the various acts committed by the defendant, some of which might appear to be innocuous when viewed alone, were viewed as a whole. This task included the gathering and presenting of evidence on such issues as the negotiations leading up to Johnson & Johnson's acquisition of StimTech, the relationship of StimTech and Devices, the effect on StimTech of Johnson & Johnson's decision to close Devices, the development and divestiture of StimTech's pace-

maker business, the defendant's involvement in Project Summer, the defendant's foreclosing of the plaintiffs' efforts to sell in international markets, the story of the joint electrode program with Patient Care, the thwarting of the plaintiffs' efforts to develop new applications for TENS devices, the contemporaneous development of the defendant's pain control drug business and the extraordinary measures taken by the defendant to protect its drug business. In spite of the risk involved, the plaintiffs took these seemingly isolated strands and wove them into a tapestry of proof which convinced a jury and this Court that the defendant clearly had, in fact, engaged in conduct designed to foreclose competition in violation of the antitrust laws.

Inextricably bound up in the factual problems were, of course, the legal theories which depended upon the successful development of the proof in order to be sustained. Not since the fairly early days of the antitrust laws, *e.g., Pennsylvania Sugar Refining Co. v. American Sugar Refining Co.,* 166 F. 254 (2d Cir. 1908), or the vigorous government prosecutions of the 1940's, *e.g., United States v. Crescent Amusement Co.,* 323 U.S. 173, 65 S.Ct. 254, 89 L.Ed. 160 (1944), have antitrust cases focused with any frequency on the practice of acquiring competitors for the purpose of suppression, as basically anticompetitive and pernicious as this practice may be. Yet the plaintiffs have proved that their situation fell squarely within the rules of these old and perhaps unjustly neglected cases. The plaintiffs also found themselves blazing trails in bringing allegations of antitrust violations in the pain control industry and one of its submarkets. In addition, the plaintiffs faced alleged problems raised by the defendant in areas such as standing, market definition, predicating a per se violation of Section 1 on exclusion from a substantial market and presenting an appropriate measure of damages. Each of these was successfully overcome, ultimately, in spite of the fact that suppression cases are unique and novel in recent years inasmuch

as such practices harken back to the cartels and monopolies at the turn of the century, engaging in the most basic and pernicious types of restraints of trade.

In addition to the barriers presented by the proof problems, the burden on counsel was increased by the contingencies related to eventual payment. Over the two and one-half years in which plaintiffs' counsel have worked on this case, they have received no payment of legal fees for services performed from any source. To date, plaintiffs' attorneys have expended over 8,700 hours of time in the preparation and prosecution of this litigation. If the plaintiffs had not obtained a damage recovery from defendant, counsel would receive nothing in payment for their time. During this period, much other employment of necessity was precluded by virtue of the significant investment of the attorneys' time in this case. Out-of-pocket expenses incurred in connection with the litigation amount to approximately $88,000.00.

The delay in receipt of payment is always a concern in protracted litigation where the ongoing demands of maintaining a law firm create cash flow problems for counsel attempting to make ends meet. Payment on a monthly basis, the kind almost surely enjoyed by counsel for the defendant, enables an individual or a firm to invest the income or allocate it for other use; the plaintiffs' attorneys in the instant case have been denied that opportunity.

This Court finds that the plaintiffs have met their burden in proving an entitlement to their requested multiplier of 1.00 for the risk factor.

It is at this juncture that the Court turns to an appraisal of the quality of the attorneys' work in deciding whether an additional increase in the lodestar calculation is justified. The quality factor has been interpreted to include a degree of skill either above or below that expected for lawyers of the caliber reflected in the hourly rates, and an increase or decrease may be considered only as a reflection of that exceptional performance. *Lindy II,* 540 F.2d at 118. The Court of Appeals for the District of Columbia further clarified the standard by stating that an "upward adjustment for quality is appropriate only when the attorney performed exceptionally well or obtained an exceptional result for the client." *Copeland v. Marshall,* 641 F.2d 880, 894 (D.C. Cir. 1980). It is the opinion of this Court that both performance *and* result were exceptional in the instant case.

Initially, the sheer magnitude of the untrebled damages $56,800,000.00, is significant. Since the passage of the Antitrust Act in 1890, no larger verdict has ever been recovered by individuals and no larger verdict has ever been returned in Minnesota.

Although the defendant has attempted to belittle the judgment in this action by passing it off as "revolutionary" and ultimately not sustainable, this Court is of exactly the opposite opinion, viewing the defendant's conduct in this case as being one of the most clear-cut violations of the antitrust laws imaginable and as being exactly that type of misconduct the antitrust laws were enacted to prevent. Moreover, the benefits resulting from the verdict are becoming increasingly obvious. The jury found, and this Court agrees, that by Johnson & Johnson's suppression of StimTech and the TENS device, it successfully kept the majority of the people in the world who suffer from pain away from a potential cure. Johnson & Johnson sold addictive and debilitating drugs to patients while continuing to suppress TENS therapy which, if utilized, would have permitted those very patients to live a pain-free existence with no side effects. However, since the jury returned its verdict in 1981, widespread publicity about this case has been instrumental in making the public and the medical profession aware of the existence and remarkable benefits of the TENS device, despite the defendant's apparent efforts to continue to keep people in ignorance about TENS. Although these benefits have been immediate, the long-term advantages to the public of the dissemination of this invaluable information are incalculable.

Nor are the benefits the only things exceptional about this litigation; the perform-

ance of the attorneys was unusually outstanding and deserves special commendation. Plaintiffs' counsel exhibited extraordinary thoroughness in the preparation of their legal work product and demonstrated exceptional innovation in the prosecution of the case. Counsel organized over 500 exhibits at trial and presented them by use of transparencies, depositions, and charts in such a way that the jury could fully understand the issues in the case as they evolved. Counsel three times defeated summary judgment motions and three times were forced to move to compel discovery. In addition, Mr. Alioto's courtroom performance was consistently superior.

Consequently, as a result of the significance of the benefits and the excellence of the attorneys' work, it is the opinion of this Court that the requested increase in the lodestar is amply justified.

The plaintiffs' requested expenses incurred in the prosecution of this action total $88,681.63. Because the plaintiffs originally included, incorrectly, the expenses for paraprofessional services in the lodestar calculations, they were not added to the requested costs. Nor were the hours expended by Mr. Sullivan in his capacity as a witness included in the requested expenses. Therefore, the adjusted costs incurred by the plaintiffs in this litigation are as follows:

| | |
|---|---|
| Requested expenses: | $ 88,681.63 |
| Expenses for paraprofessional services: | 92,139.60 |
| Mr. Sullivan's witness fees: | 4,536.00 |
| TOTAL EXPENSES: | $185,357.23 |

█ The final request of the plaintiffs is for the Court to increase the total award of attorneys' fees to $5,000,000.00 "so as to bring the fee more nearly into proportion with the size and quality of the result achieved in this case." (Plaintiffs' Memorandum, p. 28.) The plaintiffs submit that the triple lodestar amount is disproportionately low in comparison with the total judgment of $170,400,000.00. Although this Court agrees, the precedents of this Circuit compel this Court reluctantly to deny the plaintiffs' request.

The Court of Appeals for the Eighth Circuit has stated that in suits "involving substantial actual damages, courts test the reasonableness of the attorney's fees award by examining the ratio of the attorney's fees to the untrebled damage award." *International Travel Arrangers,* 623 F.2d at 1274. In deciding that the district court's award of attorney's fees which were 177% of the untrebled damages should be more closely examined, the *Travel Arrangers* Court specifically rejected a per se rule which would *limit* an attorney's fees award to the amount of the untrebled verdict. *Id.* If courts compare attorney's fees to the size of the untrebled verdict in an attempt to determine reasonableness and then subsequently reduce fees if they are too high, it appears to this Court that adjusting a fee upward in the face of an overwhelming result is equally justified. Here, the untrebled damage award to the plaintiffs after a five and one-half month trial on the merits was $56,800,000.00; their requested attorneys' fees of $5,000,000.00 does not even reach 10% of the untrebled verdict. It is the opinion of this Court that in light of all the circumstances previously discussed, an increased award would bear a reasonable relationship to the benefits acquired and not rise to the level of "overgenerosity" which courts are admonished to eschew.

However, the decisions of the Eighth Circuit Court of Appeals do not appear to permit the latitude this Court feels appropriate, and this Court must therefore decline to increase the award further, notwithstanding this Court's belief that such an increase should be made, particularly in light of the result and the benefit to the public from this case. This Court would urge the Court of Appeals to consider and approve the propriety of such an upward adjustment in the event the Court of Appeals is asked to review this decision.

In conclusion, IT IS HEREBY ORDERED That the following award is to be granted:

ATTORNEYS' FEES
A. Total adjusted lodestar
figure: $ 676,172.40
B. Increase of 1.00 for risk: 676,172.40
C. Increase of 1.00 for
quality: 676,172.40
TOTAL FEES: $2,028,517.20
EXPENSES:
A. Requested expenses: $ 88,681.63
B. Expenses for
paraprofessional services: 92,139.60
C. Mr. Sullivan's witness
fees: 4,536.00
TOTAL EXPENSES: 185,357.23
TOTAL FEES AND
EXPENSES: $2,213,874.43

Let Judgment Be Entered Accordingly.